**UNITED STATES of America,**
**Plaintiff,**

v.

**Jermaine HARRIS, Defendant.**

**No. CR 99–0002–MWB.**

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Sept. 14, 1999.

Patrick J. Reinert, Asst. U.S. Atty., Cedar Rapids, IA, for U.S.

Anne M Laverty, Mullin & Laverty, P.L.C., Cedar Rapids, IA, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S OBJECTIONS TO PROPOSED OBJECTIONS TO PROPOSED JURY INSTRUCTIONS**

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ............................................... 1018

II. LEGAL ANALYSIS .............................................. 1019
    A. The Jones Decision ...................................... 1019
        1. The content of the comment ......................... 1019

     2.   *Clues from the concurrences and dissent* .......................... 1023
  B.   **The Almendarez–Torres Decision, § 841, And § 846** .................... 1024
  C.   **Subsequent Decisions** .......................................... 1026
     1.   *The Fifth Circuit decisions* ..................................... 1026
     2.   *The Fourth Circuit decision* ..................................... 1028
     3.   *The Tenth Circuit decision* ..................................... 1029
     4.   *Federal district court decisions* ................................. 1029
     5.   *The teachings of subsequent decisions* ........................... 1034

*III.* *CONCLUSION* .............................................. 1034

What is the import of precedent? In our judicial system, that is perhaps the fundamental question confronting a judge grappling with any legal issue. In this case, one of the defendant's objections to the court's proposed jury instructions raises the question of the import of a recent Supreme Court decision, *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), for pleading and proof of drug quantities in criminal cases. Although the court has responded to other matters raised in the defendant's objections in a letter to counsel, the court deemed the "*Jones* issue" to be significant enough to require more detailed consideration in a written opinion.

## I. INTRODUCTION

In this criminal case, the United States charges defendant Jermaine Harris with five separate crimes: distribution of crack cocaine in violation of 21 U.S.C. § 841(a); being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(2); possession of an unregistered firearm in violation of 26 U.S.C. § 5861; possession of crack cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a); and conspiracy to commit two separate drug offenses, distribution of crack cocaine and possession of crack cocaine with intent to distribute it in violation of 21 U.S.C. § 846.[1] This matter is set for jury trial to begin on September 20, 1999.

Pursuant to the court's usual practice, the court sent the parties a first set of proposed jury instructions, designated the "9/2/99 VERSION," and solicited counsels' proposals for additions or corrections. Among the court's proposed instructions were a preliminary instruction and a final instruction each identifying the elements of the conspiracy charge as follows:

One, between about 1996 and 1997, two or more persons reached an agreement or came to an understanding to commit a drug offense or drug offenses.

Two, the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect.

*Three*, at the time the defendant joined in the agreement or understanding, he knew the essential purpose of the agreement or understanding.

Proposed Preliminary And Final Instructions To The Jury (9/2/99 VERSION), Preliminary Jury Instruction No. 3 & Final Jury Instruction No. 9; *and compare* MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE EIGHTH CIRCUIT (1997 Ed.), No. 5.06A. On September 9, 1999, the defendant faxed to the court, and subsequently filed with the Clerk of Court, his Objections to Proposed Jury Instructions. The defendant requested the addition of a fourth element to the conspiracy instruction, "that the agreement or understanding to commit a drug

---

1. The indictment alleges that each of the drug charges involves "a mixture or substance containing a detectable amount of cocaine, which contained cocaine base, commonly called 'crack cocaine,' " and indeed, specifies the amount of the "mixture or substance" at issue

on each charge. However, for convenience, the court will throughout refer to the controlled substance at issue simply as "crack cocaine," doubting that any confusion will arise thereby.

offense or drug offenses involved 50 grams or more of a mixture or substance containing cocaine base, commonly known as 'crack cocaine.' "[2] The defendant cited in support of this request the Supreme Court's recent decision in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 1228, 143 L.Ed.2d 311 (1999). For the reasons to follow, the court does not believe that *Jones* requires the addition of the requested element.

## II. LEGAL ANALYSIS

### A. The Jones Decision

In order to determine the import of the *Jones* decision, the court has relied on a reading of the *Jones* decision itself, the concurrences and dissent thereto, the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which came down just the term before *Jones* and to which the justice on both sides in *Jones* referred, and the treatment *Jones* has received from the lower courts in the past few months. The focus of concern has been that part of footnote 6 of the majority opinion in *Jones* stating the following:

> The dissent repeatedly chides us for failing to state precisely enough the principle animating our view that the carjacking statute, as construed by the Government, may violate the Constitution. *See post*, at 1229, 1235–1236, 1237. The preceding paragraph in the text expresses that principle plainly enough, and we re-state it here: under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

*Jones*, 526 U.S. at ——, 119 S.Ct. at 1224 n. 6.

Taken literally, this language would seem to require jury determination of drug quantity, not to mention notice in the indictment of drug quantity, for offenses under 21 U.S.C. § 841 and § 846, because drug quantity sets the statutory range of penalties for these offenses. In the absence of an indictment stating quantities, lowest sentencing ranges might be all that were available. Although the Circuit Courts of Appeals have uniformly concluded that drug quantity is a "sentencing enhancement" factor, not an "element" of the offense, under statutes such as § 841 and § 846, their conclusions are not not necessarily dispositive. The Circuit Courts of Appeals had also uniformly held that the three provisions of 18 U.S.C. § 2119, the car-jacking statute in question in *Jones*, defined sentencing enhancements, not separate crimes with slightly different elements, yet the Supreme Court in Jones overturned those holdings. *See Jones*, 526 U.S. at ——, 119 S.Ct. at 1217.

### 1. The context of the comment

The import of the comment in footnote 6 depends, to a large degree, on the context in which it was made. In *Jones*, the Court mas not deciding whether treating a factor that increased a sentencing range as a sentencing factor, not an element, was a violation of the Fifth, Sixth, or Fourteenth Amendments. Rather, the Court was determining whether § 2119, the car-jacking statute, "defined three distinct offenses or a single crime with a choice of three maximum penalties, two of them dependent on sentencing factors exempt from the requirements of charge and jury verdict." *See Jones*, 526 U.S. at ——, 119 S.Ct. at 1217. The specific holding of the *Jones* majority was that § 2119 "establishe[s] three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury

---

**2.** The indictment charged that the conspiracy crime involved 50 grams or more of a mixture or substance containing a detectable amount of cocaine, which contained cocaine base, commonly called "crack cocaine." *See* Indictment, Count V.

for its verdict." *Id.* at ——, 119 S.Ct. at 1228.

Although the decision "does not announce any new principle of constitutional law," the decision "interprets a particular federal statute in light of a set of constitutional concerns that have emerged through a series of our decisions over the past quarter century." *Id.* at 1228 n. 11. Therefore, the majority justified its conclusion that the statute defined three distinct offenses at least in part "in light of the rule that any interpretive uncertainty should be resolved to avoid serious questions about the statute's constitutionality." *Id.* at 1217; *see id.* at 1228. Whatever the constitutional interest of the decision, its primary goal was statutory interpretation, and the constitutional concerns only came to the fore because the text of the statute itself was uncertain.

In pursuit of its primary goal of interpretation of the car-jacking statute, the majority in *Jones* first reiterated the significance of a determination of whether a fact specified in the statute defining the offense is an element of an offense rather than a sentencing factor, noting that "elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." *Id.* at 1219. Thus, at the outset, the majority adhered to the long-standing principle that only *elements* of offenses must be treated in this fashion.

Turning specifically to interpretation of the statute to determine which specified facts were elements, and which were merely sentencing factors, the majority relied first on rules of statutory interpretation, not constitutionality, looking to see how much of the statute was required to define a complete offense and its punishment, *see id.* at ——, 119 S.Ct. at 1219–20; examples of comparable statutes, *see id.;* and state practice, *see id.* at 1221. However, the majority rejected subsequent legislative history in the form of the 1996 amendments to the statute, and found contemporaneous legislative history unhelpful. *See id.* at 1221–22. The majority concluded,

on the basis of these considerations, that "the fairest reading of § 2119 treats the fact of serious bodily harm as an element, not a mere enhancement," but the majority "recognize[d] the possibility of the other view." *Id.* at 1222.

Because some doubt remained as to the proper interpretation of the statute, the majority turned to the rule that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Id.* (quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 29 S.Ct. 527, 53 L.Ed. 836 (1909)). The majority then surveyed its prior precedent to determine whether treating the statute as defining a single offense with sentencing enhancements would conjure " 'grave and doubtful constitutional questions." *See id.* at 1223–24.

The majority focused on the due process guarantee of the Fourteenth Amendment and the Sixth Amendment's guarantee of notice and a right to jury trial. The majority then posed, *but did not answer,* the question presented by these constitutional concerns as demonstrated by its precedents:

> *McMillan,* . . . recognizes a question under both the Due Process Clause of the Fourteenth Amendment and the jury guarantee of the Sixth: when a jury determination has not been waived, may judicial factfinding by a preponderance support the application of a provision that increases the potential severity of the penalty for a variant of a given crime? The seriousness of the due process issue is evident from *Mullaney's* insistence that a State cannot manipulate its way out of *Winship,* and from *Patterson's* recognition of a limit on state authority to reallocate traditional burdens of proof; the substantiality of the jury claim is evident from the practical implications of assuming Sixth Amendment indifference to treating a

fact that sets the sentencing range as a sentencing factor, not an element.

*Jones,* 526 U.S. at ——, 119 S.Ct. at 1224 (referring to *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); and *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)). Footnote 6 immediately follows this summary of precedent.

Again, that footnote states that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 1224 n. 6. The majority immediately explained further:

> *Because our prior cases suggest rather than establish this principle, our concern about the Government's reading of the statute rises only to the level of doubt, not certainty.* Contrary to the dissent's suggestion, the constitutional proposition that drives our concern in no way "call[s] into question the principle that the definition of the elements of a criminal offense is entrusted to the legislature." Post, at 1236 (internal quotation marks omitted). The constitutional guarantees that give rise to our concern in no way restrict the ability of legislatures to identify the conduct they wish [to] characterize as criminal or to define the facts whose proof is essential to the establishment of criminal liability. *The constitutional safeguards that figure in our analysis concern not the identity of the elements defining criminal liability but only the required procedures for finding the facts that determine the maximum permissible punishment, these are the safeguards going to the formality of notice, the identity of the factfinder, and the burden of proof.*

*Id.* (emphasis added). Thus, the majority found that its prior precedent only raised a *doubt,* not a *certainty,*u that § 2119 would

be unconstitutional if it treated a factor increasing the sentencing range as a sentencing factor, not as an element. *See id.* (first italicized passage).

The problem is, the majority then raised *another* specter of unconstitutionality of greater concern for present purposes, by suggesting that the constitutional safeguards of formality of notice, identity of the factfinder, and burden of proof *also* attach to the determination of facts going to the maximum permissible penalty, whatever the elements of the offense itself were defined to be. *Id.* (second italicized passage). This concern is articulated further in the body of the opinion immediately following footnote 6, where the majority comments,

> If a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determinations of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact necessary for a maximum 15–year sentence would merely open the door to a judicial finding sufficient for life imprisonment. It is therefore no trivial question to ask whether recognizing an unlimited legislative power to authorize determinations setting ultimate sentencing limits without a jury would invite erosion of the jury's function to a point against which a line must necessarily be drawn.
>
> The question might well be less serious than the constitutional doubt rule requires if the history bearing on the Framers' understanding of the Sixth Amendment principle demonstrated an accepted tolerance for exclusively judicial factfinding to peg penalty limits. But such is not the history.

*Id.* at 1224. After a review of the history, in British and American law, of the tension between jury and non-jury determinations of facts with a large impact on the criminal defendant's potential sentence, *id.* at 1224–26, the court concluded,

In sum, there is reason to suppose that in the present circumstances, however peculiar their details to our time and place, the relative diminution of the jury's significance would merit Sixth Amendment concern.

*Id.* at 1226.

This "Sixth Amendment concern," however, *did not* harden into a "rule" in *Jones,* because the majority continued,

It is not, of course, that anyone today would claim that every fact with a bearing on sentencing must be found by a jury; we have resolved that general issue and have no intention of questioning its resolution. The point is simply that diminishment of the jury's significance by removing control over facts determining a statutory sentencing range would resonate with the claims of earlier controversies, to *raise a genuine Sixth Amendment issue not yet settled.*

*Id.* at 1226 (emphasis added). To show that the Sixth Amendment concern about notice, proof, and jury determination was alive, but not settled, in the Court's prior precedent, the majority then reviewed several cases subsequent to *McMillan. Id.* at 1226–28.

The most recent of these decisions was *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which the *Jones* majority read to "stan[d] for the proposition that not every fact expanding a penalty range must be stated in a felony indictment, the precise holding being that recidivism increasing the maximum penalty need not be so charged." *Jones,* 526 U.S. at ——, 119 S.Ct. at 1226–27. The *Jones* majority found that this holding "rested in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element to be set out in the indictment." *Id.* at 1227. The majority then found that the "repeated emphasis" in *Almendarez–Torres* "on the distinctive significance of recidivism leaves no question that the Court regarded that fact as potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing," concluding that "[o]ne basis for that possible constitutional distinctiveness is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense, and certainly unlike the factor before us in this case, a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." *Id.* The majority rejected the dissenters' assertion that *Almendarez–Torres* "stood for the broad proposition that any fact increasing the maximum permissible punishment may be determined by a judge by a preponderance," because if that were the rule *Almendarez–Torres* established, it was "a mystery why the *Almendarez–Torres* majority engaged in so much discussion of recidivism, or why, at the crux of its constitutional discussion, it turned first to discuss the 'tradition' of recidivism's treatment as a sentencing factor, or why it never announced the unqualified holding that today's dissenters claim to find in it." *Jones,* 526 U.S. at ——, 119 S.Ct. at 1227 n. 10.

The majority in *Jones* then found that in *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), the Court had rejected the argument that capital sentencing must be a jury task, "on the ground that capital sentencing is like sentencing in other cases, being a choice of the appropriate disposition, as against an alternative or a range of alternatives." *Jones,* 526 U.S. at ——, 119 S.Ct. at 1227. Similarly, the majority in *Jones* found that *Hildwin v. Florida,* 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989) (*per curiam*), stood for the proposition that a judge may make a death-qualifying determination of aggravating facts, following a verdict of guilty of murder and a jury recommendation of death, but that the decision was not sufficiently analogous to the question before the court concerning the car-jacking statute to "drive the answer to the Sixth Amendment question raised by the Government's position here," because "[i]n *Hildwin,* a jury made a sentencing

recommendation of death, thus necessarily engaging in the factfinding required for imposition of a higher sentence, that is, the determination that at least one aggravating factor had been proved." *Jones*, 526 U.S. at ——, 119 S.Ct. at 1227–28. The majority *in Jones* found that *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), confirmed its reading of *Hildwin*, because in *Walton*, the Court rejected the contention that every finding underlying a sentencing determination must be made by a jury, because the finding of aggravating facts within the traditional scope of capital sentencing was characterized "as a choice between a greater and a lesser penalty, not as a process of raising the ceiling of the sentencing range available." *Jones*, 526 U.S. at ——, 119 S.Ct. at 1228.

Taken as a whole, the majority decision articulates what this court will call the "*Jones* Principle," that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 1224 n. 6. It did so, however, in the context of statutory interpretation-to attempt to settle uncertainty about the text of the car-jacking statute by avoiding the constitutional doubts it believed might otherwise arise. Furthermore, the majority admitted that this principle, however categorically stated, was only "suggest[ed]," not "establish[ed]," by its prior precedent, so that failure to comply with the principle "rises only to the level of [constitutional] doubt, not certainty." *Id.* Indeed, the majority reiterated that it was not instituting a new rule, stating that "our decision today does not announce any new principle of constitutional law, but merely interprets a particular federal statute in light of a set of

constitutional concerns." *Id.* at 1228 n. 11. The majority recognized that it was only forecasting the outcome if presented directly with the question of whether or not certain facts increasing the range of sentencing must be pleaded in the indictment, tried to a jury, and proved beyond a reasonable doubt, because it contemplated what would happen "[i]f the constitutional concern we have expressed *should lead* to a rule requiring jury determination of facts that raise a sentencing ceiling...." *Id.* (emphasis added).[3]

Thus, as this court reads the majority opinion, the "*Jones* Principle" is not yet the law.

### 2. Clues from the concurrences and dissent

This court's reading of the majority opinion in *Jones* seems to be confirmed by the treatment it received from the concurrences and the dissent. Justice Stevens concurred specifically to state his conviction "that it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed," and that he found it "equally clear that such facts must be established by proof beyond a reasonable doubt." *Jones*, 526 U.S. at ——, 119 S.Ct. at 1228–29 (Stevens, J., concurring). Furthermore, in Justice Steven's view, "a proper understanding of this principle encompasses facts that increase the minimum as well as the maximum permissible sentence, and also facts that must be established before a defendant may be put to death." *Id.* at ——, 119 S.Ct. at 1229. Thus, while the majority *suggested* that certain facts increasing a potential *minimum* sentence, even if defined by a legislature as sentencing factors, not elements,

---

**3.** As to what would happen if such a rule were to come into being in the proper decision, the majority opined,

> that rule would in no way constrain legislative authority to identify the facts relevant to punishment or to establish fixed penalties. The constitutional guarantees that

prompt our interpretation bear solely on the procedures by which the facts that raise the possible penalty are to be found, that is, what notice must be given, who must find the facts, and what burden must be satisfied to demonstrate them.

*Jones*, 526 U.S. at——, 119 S.Ct. at 1228 n. 1.

would nonetheless be subject to constitutional standards of notice, proof, and jury determination, Justice Stevens would *hold* that such facts could not be removed from jury determination by a legislature, and would go one step further, requiring that facts that increase a potential *minimum* sentence must also be subjected to the same constitutional requirements. Justice Scalia, somewhat more succinctly, asserted that "it is unconstitutional to remove from the jury the assessment of facts that *alter* the congressionally prescribed range of penalties to which a criminal defendant is exposed." *Id.* at 1229 (Scalia, J., concurring) (emphasis added). Justice Scalia was thus concerned with factors that "alter" a sentencing range, not merely increase it. Therefore, this court believes that the concurring justices were ready to announce a rule that the majority opinion does not announce, obliterating the distinction between "elements" and "sentencing factors," and instead requiring that all facts that alter a defendant's sentencing range be subjected to constitutional requirements of notice, proof, and jury determination. These justices would *not* have felt compelled to concur if the majority decision already announced such a rule.

The dissenters, although criticizing the majority opinion, do not assert that it establishes a new rule, either. Rather, they fear the effects of a majority opinion that "*casts doubt* on sentencing practices and assumptions followed not only in the federal system but also in many states." *Jones,* 526 U.S. at ——, 119 S.Ct. at 1229 (Kennedy, J., dissenting, joined by Justices Rehnquist, O'Connor, and Breyer) (emphasis added). Furthermore, the dissenters objected to any eroding of the distinction between "sentencing factors" and "elements." *See id.* at 1230–31. Indeed, after analyzing the text of the statute in question and applying other rules of statutory interpretation, the dissenters would uphold an interpretation of the statute as defining one offense with additional sentencing enhancements and, as so interpreted, find that the statute is constitutional. *See id.* at 1238.

## B. The Almendarez–Torres Decision, § 841, And § 846

It is interesting to note that, just the term before *Jones* was handed down, the Supreme Court had upheld treatment of recidivism as a sentencing factor that need not be set forth in the indictment as an element of the offense charged. *See Almendarez–Torres,* 523 U.S. at 247, 118 S.Ct. 1219. The precise statute at issue was 8 U.S.C. § 1326, which establishes criminal penalties for reentry of certain deported aliens. *See id.* at 229, 118 S.Ct. 1219 (quoting the statute as it existed at the time of the petitioner's conviction). As mentioned above, the Court in *Almendarez–Torres* concluded that whether a factor identified in a statute defining an offense is a "sentencing factor" or "element" depended upon "the statute's language, structure, subject matter, context, and history," because such factors "typically help courts determine a statute's objectives and thereby illuminate its text." *Id.* at 228, 118 S.Ct. 1219. The Court found that the subject matter of the statute, recidivism, "is as typical a sentencing factor as one might imagine." *Id.* at 230, 118 S.Ct. 1219 (citing, *inter alia,* 21 U.S.C. § 841, which also increases penalties for drug distribution for recidivism). Turning to the structure and context of the statute, the Court found as follows:

> In essence, subsection (a) says that "any alien" once "deported," who reappears in the United States without appropriate permission, shall be fined or "imprisoned not more than 2 years." Subsection (b) says that "any alien described in" subsection (a), "whose deportation was subsequent to a conviction" for a minor, or for a major, crime, may be subject to a much longer prison term.

*Id.* at 230–31, 118 S.Ct. 1219. The Court concluded that by reading subsection (b) to provide additional penalties, rather than as defining a separate offense, any "mystery" about the meaning of the statute "disappears," and the statute clearly defines higher penalties for an alien defined in

subsection (a) who has previously committed another crime. *Id.* at 231–32, 118 S.Ct. 1219. The legislative history of the statute demonstrated further that subsection (b) imposed enhanced penalties for a recidivist. *Id.* at 233–34, 118 S.Ct. 1219. Also, the context of the statute, in a section entitled "penalties," signaled a " 'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute." *Id.* at 234, 118 S.Ct. 1219 (quoting *Trainmen v. Baltimore & Ohio R. Co.,* 331 U.S. 519, 528–29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947)). The court also concluded that a contrary interpretation "risks unfairness," because requiring the government to prove prior conviction as a substantive element of the offense "risks significant prejudice" to the defendant. *Id.* at 234–35, 118 S.Ct. 1219.

The Court then considered other arguments that the statute defined separate offenses, rather than sentencing factors. The Court found that its conclusion that the statute defined only sentencing factors was true, even though the sentencing enhancements were of considerable magnitude:

> [O]ne might try to derive a congressional intent to establish a separate crime from the magnitude of the increase in the maximum authorized sentence. The magnitude of the change that Congress made in 1988, however, proves little. That change-from a 2–year maximum to 5– and 15–year maximums-is well within the range set forth in other statutes that the lower courts have generally interpreted as providing for sentencing enhancements.

*Id.* at 235–36, 118 S.Ct. 1219. The first statute upon which the Court relied in support of this assertion was 21 U.S.C. § 841(b)(1). *See id.* at 236, 118 S.Ct. 1219. The Court also rejected the petitioner's assertions that later amendments to the statute or the "constitutional doubt" principle, upon which the majority in *Jones* relied, required a reading of the statute as defining separate offenses. *See id.* at 236–47, 118 S.Ct. 1219.

Section 841 has precisely the clarity lacking in § 2119, in that it specifies the offense in subsection (a), then identifies sentencing factors in subsection (b), which is specifically headed "Penalties." *See* 21 U.S.C. § 841. The Court *Almendarez–Torres* recognized, *inter alia,* that the heading of a section is a tool for determining whether a provision is a sentencing factor or an element of the offense. *See Almendarez–Torres,* 523 U.S. at 234, 118 S.Ct. 1219. Furthermore, drug quantities have also traditionally been treated as a sentencing enhancement factor. *See, e.g., id.* at 230, 118 S.Ct. 1219 (considering whether a factor has typically been treated as a sentencing factor); *see also id.* at 236, 118 S.Ct. 1219 (noting that courts had traditionally considered § 841(b) as providing sentencing enhancements); *see also Edwards v. United States,* 523 U.S. 511, 513–15, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998) (discussing the treatment of drug quantity as a sentencing enhancement under the Sentencing Guidelines).

This court finds that this analysis is equally applicable to an offense charged under 21 U.S.C. § 846, the charge on which Jermaine Harris contends *Jones* requires insertion of an element identifying his knowledge of the quantity of drugs involved as an element of the offense. Section 846 defines the conspiracy with which Harris is charged as follows:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846. This conspiracy statute thus identifies the *penalties* for conspiracy to commit a § 841 offense as the same as those for commission of the substantive offense itself.

Thus, in the case of § 841 and § 846, the text alone *does* justify a confident inference that Congress intended to define one offense with various sentencing enhancements. *Compare Jones,* 526 U.S. at ——,

119 S.Ct. at 1220. Indeed, were it not for the constitutional "concerns" expressed by the majority in *Jones,* this statute would seem to fit the test in *Almendarez–Torres* for distinguishing between "elements," subject to constitutional notice, proof, and jury determination requirements, and "sentencing factors," which are not subject to such constitutional requirements. *See Almendarez–Torres,* 523 U.S. at 228, 118 S.Ct. 1219 (to answer the question of whether a factor is an element or sentencing factor in the statute defining the offense and punishment, the court must "look to the statute's language, structure, subject matter, context, and history"); *see also Jones,* 526 U.S. at ——, 119 S.Ct. at 1229 & 1231. However, subsections (A) through (D) of § 842(b)(1) do increase both the maximum penalties, based on drug quantities, running afoul of the constitutional concerns of the majority in *Jones,* and increase the mandatory minimums, running afoul of Justice Stevens' and Scalia's concurring opinions.

### C. Subsequent Decisions

In a precedential system, it is, of course, well to consider the interpretation of a potentially landmark decision by other courts. The Eighth Circuit Court of Appeals has not yet spoken on the import of *Jones,* so this court must look elsewhere for guidance. The Circuit Court of Appeals to give *Jones* the most frequent consideration so far is the Fifth, but the Fourth and Tenth Circuit Courts of Appeals have also considered the import of *Jones* in published decisions, as have a number of federal district courts. The court will therefore survey these federal decisions for whatever insight they may provide.

### 1. The Fifth Circuit decisions

In the first of the series of decisions in which the Fifth Circuit Court of Appeals considered the import of *Jones, United States v. Matthews,* 178 F.3d 295 (5th Cir. 1999), the court simply followed the conclusion in *Jones* that § 2119 states three separate offenses. *Matthews,* 178 F.3d at 301. However, it is interesting to note

that in the very next section of the *Matthews* opinion, when considering whether provisions of 18 U.S.C. § 521 stated sentencing factors or elements of the offense, even though the "enhancements" increased the maximum sentence for the offense, the court looked to *Almendarez–Torres,* not *Jones. See Matthews,* 178 F.3d at 301–02.

In the second of its decisions considering the import of *Jones, United States v. Castillo,* 179 F.3d 321 (5th Cir.1999), the Fifth Circuit Court of Appeals confronted the defendants' assertion that, in the context of 18 U.S.C. § 924(c)(1), the type of firearm used or carried during and in relation to a crime of violence or a drug trafficking crime is an element of the offense. *See Castillo,* 179 F.3d at 326. The court rejected that contention, however, as it had in its prior decision, *see United States v. Branch,* 91 F.3d 699 (5th Cir.1996), *cert. denied,* 520 U.S. 1185, 117 S.Ct. 1466, 137 L.Ed.2d 681 (1997). The portion of the court's analysis of interest here was as follows:

> [O]ur prior decision does not contravene *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), two intervening Supreme Court decisions. It accords with the directive in *Almendarez–Torres,* 523 U.S. at ——, 118 S.Ct. at 1223, to look at "language, structure, subject matter, context, and history" in determining whether or not Congress intended for a statute to define a separate crime or to set forth a separate sentencing factor. *See Branch,* 91 F.3d at 738–40 (examining § 924(c)(1)'s text, structure, and legislative history). Our prior decision also does not conflict with *Jones.* This case and *Jones* differ in a critical way. In *Jones,* the legislative history contained conflicting indications of whether Congress intended for 18 U.S.C. § 2119, the statute at issue, to lay out three distinct offenses or a single crime with three maximum penalties. *See Jones,* 526

U.S. at ——, 119 S.Ct. at 1221. In contrast, the legislative history of § 924(c)(1) discloses that Congress consistently referred to the enhanced weapon clause as a penalty and never indicated that it intended to create a new, separate offense for machine guns. *See Branch,* 91 F.3d at 739. Accordingly, we decline to reconsider our prior decision that the type of firearm used or carried is a sentencing enhancement, and not an element of the offense.

*Castillo,* 179 F.3d at 327–28. The court also rejected the defendants' "constitutional doubt" argument, on the ground that it had been waived. *Id.* at 328.

In its next decision, however, the Fifth Circuit Court of Appeals found that *Jones* should be given a much broader reading. In *United States v. Nunez,* 180 F.3d 227 (5th Cir.1999), the defendant asserted that he had been indicted under 18 U.S.C. § 111 for the crime of resisting arrest by means of a firearm, but had been convicted under jury instructions that allowed him to be found guilty of the offense without using a firearm. *Nunez,* 180 F.3d at 231. The Fifth Circuit Court of Appeals rejected the government's contention "that § 111(b), the provision allowing extra punishment for resisting with a firearm, is merely a penalty provision," and that "the dangerous weapon allegation is not an essential element of the indictment and does not restrict the government's theory of conviction." *Id.* at 233. The court wrote,

> Nunez is correct, however, in stating that *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), forecloses this reading of federal criminal statutes except where statutory sections specifically increase punishments for prior crimes. *See id.* at 1226. *Jones* teaches us to avoid encroaching on a defendant's Fifth Amendment rights by construing statutes setting out separate punishments as creating separate, independent criminal offenses rather than a single criminal offense with different punishments. *See id.*

In *Jones,* the Court interpreted 18 U.S.C. § 2119, which imposed different punishments depending on the severity of the injuries suffered by victims of a car-jacking, as creating three separate offenses rather than a single offense with three punishments. Likewise, we read 18 U.S.C. § 111 as creating three separate offenses, to-wit: resistance by means of (1) simple assault; (2) more serious assaults but not involving a dangerous weapon; and (3) assault with a dangerous weapon. The government chose to indict Nunez for resistance by means of assault with a dangerous weapon, and it is not permitted to shift its theory of the case to a separate, independent criminal offense without obtaining a separate indictment. *Jones* confirms our view that allowing the jury to convict Nunez of forcibly resisting without the use of a dangerous weapon is a conviction "of an offense not charged in the indictment." *Stirone [v. United States],* 361 U.S. [212,] 213, 80 S.Ct. 270, 4 L.Ed.2d 252 [(1960)].

*Nunez,* 180 F.3d at 233–34. Thus, in *Nunez,* the Fifth Circuit Court of Appeals read *Jones* to state a "rule" that, unless a statute specifically increases punishments for prior crimes, the statute must be construed as creating separate, independent criminal offenses each time it sets out separate punishments. Presumably, under *Nunez,* statutes such as 18 U.S.C. §§ 841 and 846, which enhance punishments based on the quantity of drugs involved, would define different crimes based on drug quantity, and the drug quantity would then become an element of the offense. In light of this court's reading of *Jones,* however, such a conclusion would be an application of the "*Jones* Principle" before it is the "*Jones* Rule."

Nonetheless, the Fifth Circuit Court of Appeals followed the path laid out in *Nunez,* in its most recent decision considering the import of *Jones, Bledsue v. Johnson,* 188 F.3d 250 (5th Cir.1999). In *Bledsue,* the petitioner for *habeas corpus* relief had been convicted under a Texas statute that provided different punishments based on

the quantity of drugs possessed. *Bledsue,* 188 F.3d at 260 n. 19. Following *Jones,* the court "read this statute as creating three separate offenses rather than one offense with three punishments, thus avoiding the constitutional concerns expressed in *Jones.*" *Id.* More specifically, the court concluded that "because the amount of the controlled substance possessed determines the severity of punishment, the amount possessed is a jury question and an essential element under *Jones* and *Jackson* [*v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ]." *Bledsue,* 188 F.3d at 260. The court concluded, however, that "adulterants and dilutants" were included in all determinations of drug quantity under the Texas statute, so that "adulterants and dilutants" did not constitute essential elements of the offense. *Id.* at 260.

### 2. *The Fourth Circuit decision*

The Fourth Circuit Court of Appeals has, at least initially, adopted the narrower reading of *Jones* originally espoused by the Fifth Circuit Court of Appeals in *Matthews* and *Castillo.* In *United States v. Davis,* 184 F.3d 366 (4th Cir.1999), the court was called upon to consider whether "great bodily injury" resulted was an offense element or a sentencing factor under a South Carolina statute defining an offense of failure to stop a vehicle when signaled by a law enforcement vehicle. *See Davis,* 184 F.3d at 367. The court acknowledged the statement in *Jones* that "[m]uch turns on the determination that a fact is an element of an offense rather than a sentencing consideration.'" *Id.* at 368, 184 F.3d 366, 368 (quoting *Jones,* 526 U.S. at ——, 119 S.Ct. at 1219). In *Davis,* the court carefully pursued the analytical steps of *Jones,* beginning with parsing of the text of the statute, then considering extrinsic sources of congressional intent, where the text provided no "confident inference," and finally, where the first two steps left open the possibility that the factor in question was only a sentencing factor, considering whether "constitutional doubt" required treatment of the factor as an element of the offense. *See id.* at 368, 184 F.3d 366, 368–70 (describing the analysis in *Jones)see also id.* at 368, 184 F.3d 366, 1999 WL 496519 at *3–5 (application of the analysis). The third step in the analysis proved critical in *Davis:*

> Although we believe that the text and extrinsic sources of the type identified in *Jones* support the conclusion that great bodily injury is an offense element for purposes of § 56-5-750(C)(1), we readily acknowledge that neither the text nor extrinsic sources compel such a conclusion. It is for precisely that reason, however, that we conclude, under the third step of the *Jones* analysis, that great bodily injury must be construed as an offense element under the canon of constitutional avoidance. At least one of the constitutional concerns identified in *Jones* is at issue here: namely, whether allowing whether great bodily injury resulted to be proven at the sentencing stage by a mere preponderance of the evidence would violate appellant's right to due process, and specifically his right to fair notice. *In order to avoid resolving this constitutional question, we conclude that great bodily injury was an offense element for purposes of § 56-5-750(C)(1), and there that, because appellant's indictment did not allege that great bodily injury resulted, appellant should not have been sentenced under § 56-5-750(C)(1).*
>
> Because appellant's indictment alleged only the offense elements contained in § 56-5-750(A), and because appellant therefore pled guilty only to a violation of that section, we vacate the sentence erroneously imposed by the district court § 56-5-750(B)(2), the applicable sentencing provision for § 56-5-750(B)(2), the applicable sentencing provision for repeat offenders such as appellant.

*Davis,* 184 F.3d at 371 (emphasis added; footnotes omitted). Thus, as in *Matthews* and *Castillo,* only where it was unclear

from the statute itself or its legislative history whether factors in a statute defining a criminal offense were intended to be elements of the offense or mere sentencing factors did the *Davis* court invoke the *Jones* rule of constitutional doubt to construe the uncertain factors as elements of the offense.[4]

### 3. The Tenth Circuit decision

The Tenth is the only other federal Circuit Court of Appeals thus far to consider the import of *Jones* in a published decision.[5] In *United States v. Eads*, 191 F.3d 1206 (10th Cir.1999), the Tenth Circuit Court of Appeals considered a defendant's assertion that knowledge that a firearm used in a drug trafficking crime was a machine gun was an element of the offense defined by 18 U.S.C. § 924(c)(1)(B)(ii).

*Eads*, 191 F.3d 1206.[6] The defendant, citing *Jones*, asserted that, because the fact that the firearm was a machine gun increased his sentence from five to thirty years, the statute required the court to hold that the machine gun provision of § 924(c) is an element of the offense, for which a separate *mens rea* must be proved. *Id.* The Fourth Circuit Court of Appeals found that there was a split in the circuits on the question of whether the character of the firearm must be found by the jury under § 924(c), but found the conclusion of the Fifth Circuit Court of Appeals in *Castillo* persuasive. *See id.* Following *Castillo*, the Fourth Circuit Court of Appeals found that *Jones* did not

conflict with the conclusion that the type of firearm used or carried is a sentencing enhancement rather than an element of the offense, concluding that "[t]his is a more reasonable reading of *Jones*, one that anchors its holding to its facts, *i.e.*, the statutory provision involved." *Id.*[7]

### 4. Federal district court decisions

Few district courts have yet considered the import of *Jones* in published decisions. The first to do so was the United States District Court for the Western District of Michigan, *United States v. Lilly*, 56 F.Supp.2d 856 (W.D.Mich. 1999). In *Lilly*, the court considered *sua sponte whether Jones* barred the court from considering the death of a victim as a ground for upward departure in sentencing of a defendant who pleaded guilty to an offense under 21 U.S.C. § 841, because, under *Jones*, the death of the victim might be an element of the offense. *Lilly*, 56 F.Supp.2d at 857. That court noted, as has this one, that in footnote 6 of *Jones*, "the Court hedged by noting that 'prior cases suggest rather than establish this principle ...'" *Id.* (quoting *Jones*, 526 U.S. at ——, 119 S.Ct. at 1224 n. 6). Furthermore, the court noted that,

> More importantly, earlier in the opinion [in *Jones*] the Court explained that Congress has the power to explicitly treat the determination that death or serious bodily injury occurred as a sentencing factor rather than as an element, and had in fact done so on several occa-

4. The Fourth Circuit Court of Appeals has also considered the import of *Jones* in an unpublished decision, *United States v. Allen*, 187 F.3d 631 (4th Cir.1999) (table opinion), in which the court remanded for resentencing of a defendant convicted under the precise statute at issue in *Jones*, 18 U.S.C. § 2119, on the ground that the statute defined three separate offenses.

5. The Ninth Circuit Court of Appeals considered the import of *Jones* in an unpublished decision, *Arreguin v. Prunty*, 188 F.3d 512, 1999 WL 639023 (9th Cir. Aug.18, 1999) (table opinion), in which the court concluded that *Jones* did not require treatment of a disputed factor as defining as separate of-

fense, because the State of California has already construed the provision in question as a sentencing provision.

6. Curiously, the defendant in *Eads* did not assert such a claim as to the amount of controlled substances he possessed on charges under 21 U.S.C. § 841(b).

7. The court held further that, even if the type of firearm was an element of the crime, the error was subject to harmless-error analysis, and the record was sufficient to uphold the conviction, because the jury made the specific finding that the firearm in question was a machine gun. *Id.*

sions, citing 18 U.S.C. § 2262(b) (interstate domestic violence) and 18 U.S.C. § 248(b) (freedom of access to clinic entrances). *See id.* at ——, 119 S.Ct. at 1219.

*Lilly,* 56 F.Supp.2d 856, 857. The court also found as follows:

Additionally, the statute at issue in this case, 21 U.S.C. § 841(b)(1)(C), is drafted almost exactly like the statutes cited by the Court in *Jones* as examples of congressional determinations that death or serious bodily injury was a sentencing matter for the judge. Section 841(b), the section addressing the effect of a finding that the use of the substance resulted in death or serious bodily injury, is entitled "penalties" and begins by stating that "any person who violates subsection (a) of this section shall be sentenced as follows...." 21 U.S.C. § 841(b). The sentencing provisions in § 841(b) are entirely separate from the elements of the offense, which are contained entirely in 21 U.S.C. § 841(a). The elements of the offense under 21 U.S.C. § 841(a) make no reference of death or serious bodily injury. *See* 21 U.S.C. § 841(a). The statutes cited by the Court, 18 U.S.C. § 2261 and 18 U.S.C. § 248, are similarly divided into a subsection (a) which provides the elements of the offense without reference to death or serious bodily injury, and subsection (b), entitled "penalties," which provides the term of imprisonment, increasing the term of imprisonment if death or serious bodily injury to the victim occurs. *See* 18 U.S.C. § 2261(b); 18 U.S.C. § 248(b).

*Lilly,* 56 F.Supp.2d at 858. This much of the *Lilly* court's analysis is similar to this court's own analysis of §§ 841 and 846, above.[8]

---

8. Unfortunately, this court parts company with the decision in Lily on the question of whether the Supreme Court in *Edwards v. United States,* 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998), settled the questions of whether factors identified in 21 U.S.C. § 841(b) are sentencing factors that the judge may find by a preponderance of the evidence, rather than elements of the offense which must be found by a jury beyond a reasonable doubt. *See Lilly,* 56 F.Supp.2d at 858 (citing *Edwards,* 523 U.S. at 513–14, 118 S.Ct. 1475). The Court in *Edwards* was not attempting to resolve a split in the circuits on this question, but on a somewhat different question, in light of a jury's general verdict convicting the defendant of conspiracy under instructions stating that " 'the government must prove that the conspiracy...involved measurable amounts of cocaine *or* cocaine base' ":

Petitioners argued (for the first time) in the Court of Appeals for the Seventh Circuit that the judge's sentences were unlawful insofar as they were based on crack. They said that the word "or" in the judge's instruction (permitting a guilty verdict if the conspiracy involved either cocaine or crack) meant that the judge must assume that the conspiracy involved only cocaine, which drug, they added, the Sentencing Guidelines treat more leniently than crack. See United States Sentencing Commission, Guidelines Manual § 2D1.1(c) (drug table) (Nov. 1994) (USSG). The Court of Appeals, however, held that the judge need not assume that only cocaine was involved. 105 F.3d 1179 (1997). *It pointed out that the*

*Sentencing Guidelines require the sentencing judge, not the jury, to determine both the kind and the amount of the drugs at issue in a drug conspiracy.* 105 F.3d, at 1180. *And it reasoned that the jury's belief about which drugs were involved—cocaine, crack, or both—was therefore beside the point.* 105 F.3d, at 1181. *In light of a potential conflict among the circuits on this question, see, e.g., United States v. Bounds,* 985 F.2d 188, 194–95 (C.A.5 1993); *United States v. Pace,* 981 F.2d 1123 (C.A.10 1992); *United States v. Owens,* 904 F.2d 411 (C.A.8 1990), we granted certiorari.

*Edwards,* 523 U.S. at 513, 118 S.Ct. 1475 (emphasis added). In resolving this question, the Court concluded that the Sentencing Guidelines instructed the judge to determine the amount and kind of controlled substances for which a defendant should be held accountable and then impose a sentence that varies depending upon amount and kind. *Id.* at 514, 118 S.Ct. 1475. "Consequently," the Court held, "regardless of the jury's actual, or assumed beliefs about the conspiracy, the Guidelines nonetheless require the judge to determine whether the 'controlled substances' at issue—and how much of those substances—consisted of cocaine, crack, or both." *Id.* The Court then rejected the defendant's constitutional argument that the judge was required to conclude that only the controlled substance involving the more lenient sentence was the drug on which the conspiracy conviction was made. *Id.* The Court rejected that contention as irrelevant, because the judge was authorized under the

Next among the district court decisions was *United States v. Favors*, 54 F.Supp.2d 1328 (N.D.Ga. 1999), in which the court noted that, before *Jones*, there was "a fairly well established body of Eleventh Circuit caselaw holding that drug quantities [under 21 U.S.C. § 841] are to be considered as sentencing enhancements rather than substantive element[s] of the offense." *Favors*, 54 F.Supp.2d at 1330. "Then," the court continued, perhaps somewhat ruefully, "along came *Jones*." *Id.* The court's analysis of *Jones* was as follows:

> The question for decision is whether the Supreme Court in Justice Souter's footnote 6 has overruled and repudiated the ( . . . continued) approach of *McMillan* and *Almendarez–Torres*. The Court does not believe that it did. In the final analysis, *Jones* resolved the issue at hand as a matter of statutory construction, applying the rule that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Jones*, 119 S.Ct. at 1222. After footnote 6, Justice Souter discussed at length the series of cases culminating in *McMillan* and *Almendarez–Torres* . . . . This discussion would have been unnecessary if footnote 6 articulates a new rule of constitutional jurisprudence that must be applied to all other traditional sentencing enhancements.
>
> Applying the factors set forth in *McMillan* and *Almendarez–Torres*, the Court concludes that the Defendants' Fifth and Sixth Amendment rights are not violated by treating the drug quanti-

ties as sentencing enhancements rather than substantive elements of the offense in this case. Drug quantities have traditionally been treated as a sentencing factor like recidivism. Congress clearly intended the sentencing enhancements in 21 U.S.C. § 841(b) to be sentencing enhancements rather than separate substantive offenses. As in *Almendarez–Torres*, there is only an increase in the felony limits. *See Stone*, 139 F.3d at 838–39. Therefore, the Defendant's Motion to Dismiss [Doc. 33] is DENIED.

*Favors*, 54 F.Supp.2d 1328, 1330. Thus, the court in *Favors*, *like* the undersigned, does not read *Jones* to change the sentencing factors in § 841(b) (and hence § 846) into elements of the substantive offenses defined in § 841(a), where Congress clearly defined them as sentencing enhancements.

Another decision of the United States District Court for the Northern District of Georgia followed, *United States v. Bennett*, 60 F.Supp.2d 1318 (N.D.Ga. 1999).[9] In *Bennett*, the defendant, citing *Jones*, argued in a motion to dismiss that the government had failed to allege an element of the offense charged under 21 U.S.C. § 846, the quantity of the drugs involved in the conspiracy. *Bennett*, 60 F.Supp.2d at 1319. In addressing a magistrate judge's report and recommendation rejecting this argument, the court recognized the importance of proper consideration of *Jones:*

> Magistrate Judge Scofield's Report and Recommendation correctly notes that *Jones* rests upon the doctrine of constitutional doubt, and that these constitutional issues remain unsettled. (Magistrate Judge Scofield's Report and Recommendation on Co–Defendant

---

Guidelines to consider both the offense charged and other "relevant conduct" in sentencing, and that the constitutional argument would only arise if it were possible to impose a sentence that exceeded the maximum that the statutes permitted for a cocaine–only conspiracy, but such was not the case there. *Id.* at 514–15, 118 S.Ct. 1475. Thus, *Edwards* does not settle, indeed does not address, the question of whether the factors identified in

§ 841(b) are sentencing factors or elements of the offenses. *Edwards* does, however, support the contention that drug quantity has traditionally been treated as a sentencing factor, not an element of an offense under § 841 or § 846.

**9.** While the *Favors* decision was authored by Judge Thrash, the *Bennett* decision was written by Judge Murphy.

Smith's Motion to Dismiss Indictment at 2–3.) While true, it is incumbent upon the Court to take seriously the Supreme Court's discussion in *Jones*, because "those who invoke the doctrine [of constitutional doubt] must believe that the alternative is a serious likelihood that the statute will be held unconstitutional." *Almendarez–Torres*, 523 U.S. at 238, 118 S.Ct. 1219.

*Bennett*, 60 F.Supp.2d at 1321. The court noted that the defendant was not objecting to the magistrate judge's determination that the text and statutory scheme of 21 U.S.C. § 841(b) "unambiguously establish that drug quantity is a sentencing factor for the offense at issue 'a conclusion that this court, as noted above, also finds unassailable.' " *Id.* at 1322. Rather, the defendant was arguing that "regardless of the Congressional scheme behind § 841, *Jones* requires the Government to allege in the indictment 'any fact (other than prior conviction) that increases the maximum penalty for a crime,' " and he argued that " *Jones* has changed the constitutional landscape' " by establishing a new, bright-line rule. *Id.* The court, however, rejected these contentions upon a review of Supreme Court precedent and *Jones* itself in an analysis in which this court concurs:

> The Supreme Court has repeatedly rejected the idea that "whenever a State links the 'severity of punishment' to 'the presence or absence of an identified fact' the State must prove that fact beyond a reasonable doubt." *McMillan*, 477 U.S. at 84, 106 S.Ct. 2411 (quoting *Patterson*, 432 U.S. at 214, 97 S.Ct. 2319). Furthermore, in *Almendarez–Torres*, the Supreme Court rejected a proposed "rule that any [factor resulting in a] significant increase in a statutory maximum sentence would trigger a constitutional 'elements' requirement." 523 U.S. at 247, 118 S.Ct. 1219. These cases establish that consideration of whether a fact could result in an increased maximum sentence, by itself, does not determine whether that fact is an element of

a crime and thus must be included in an indictment.

> *Jones* does nothing to alter the Court's rejection of such a bright-line rule. Far from altering "the constitutional landscape," the Supreme Court observes in *Jones* that "our decision today does not announce any new principle of constitutional law." 119 S.Ct. at 1228 n. 11. In fact, with respect to the issues that must be resolved by a jury, the Supreme Court states: "It is not, of course, that anyone today would claim that every fact with a bearing on sentencing must be found by a jury; we have resolved that general issue and have no intention of questioning its resolution." 119 S.Ct. at 1226. Because *Jones* does not stand for the proposition that every fact which exposes a criminal defendant to a higher maximum penalty must be alleged in an indictment, the Court denies Defendant's Motion to Dismiss Indictment. *See United States v. Favors*, No. Civ.A.1:99–CR48–TWT, 1999 WL 454903, at *34 (N.D.Ga. July 1, 1999).

> This Court's analysis of *Jones* does not mean that consideration of whether a fact increases the defendant's maximum penalty is irrelevant with respect to whether that fact must be alleged in an indictment and proved beyond a reasonable doubt. The Supreme Court emphasizes that whether a fact increases the potential severity of a penalty for a variant of a given crime has some constitutional importance.

*Jones*, 119 S.Ct. at 1223–24 (citing *McMillan*, 477 U.S. at 88, 106 S.Ct. 2411).

> That single concern, however, may have to be considered alongside whether the fact has "traditionally" been considered an element or a sentencing factor. The Supreme Court in *Jones* noted that, in some cases, the Government may not be able to omit elements of criminal offenses that traditionally have been viewed as elements of those offenses.

*Id.* at 1223. More importantly, the Supreme Court *distinguished Almendarez–Torres,* which involved the question whether a prior conviction-a fact that altered the maximum penalty for the crime at issue—was an element of that particular crime. The Supreme Court noted:

> [T]he holding last Term rested in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element to be set out in the indictment. The Court's repeated emphasis on the distinctive significance of recidivism leaves no question that the Court regarded that fact as potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing.

*Id.* at 1227. Regardless of how Congress parses criminal elements and sentencing considerations in a particular statute, the Government may be required to allege in an indictment all facts which increase the maximum penalty and traditionally have been considered elements of that particular crime. Defendant, however, does not make this argument; nor does Defendant challenge the conclusion that drug quantity, like recidivism, traditionally has been considered a fact relevant only to sentencing. For the foregoing reasons, the Court denies Defendant's Adopted Motion to Dismiss Indictment.

*Bennett,* 60 F.Supp.2d at 1320–21 (footnotes omitted).

Finally, the United States District Court for the District of Puerto Rico considered the import of *Jones* in *United States v. Pena–Gonzalez,* 62 F.Supp.2d 366 (D.P.R. 1999). The court rejected the defendant's contention that a charge under 18 U.S.C. § 924(j), which pertains to carrying or using a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) and using a firearm to commit murder in violation of 18 U.S.C. § 1111, contains more than one offense.*Pena–Gonzalez,* 62 F.Supp.2d at 372. The court, however, concluded as follows:

Section 924 expresses Congress' intent to sentence more severely perpetrators who carry firearms in the commission of a drug trafficking crime. Section (j) is merely the sentencing provision for murder or manslaughter within this framework. Section 924(j) does not, in effect, require two separate *mens rea* at the time of commission of the crime. Rather, section (j) is a corollary provision which, upon proof of the elements of the predicate crime, in this case homicide under 18 U.S.C. § 1111, mandatorily increases the sentence. *See Hunter,* 459 U.S. at 359, 103 S.Ct. 673 (upholding a conviction under a deadly weapon statute which increased defendant's sentence by five years and under the predicate felony statute).

*Pena–Gonzalez,* 62 F.Supp.2d at 372. Of more particular interest here, the court rejected the defendant's reliance on *Jones:*

Defendant's reliance upon *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), is misplaced. The facts in *Jones* are significantly different from Defendant's situation. Unlike the *Jones* scenario, the indictment here charges Defendant with violation of 18 U.S.C. § 924(j) and specifically alleges murder as defined in 18 U.S.C. § 1111. Therefore, Defendant's indictment does not pose a *Jones* situation. Furthermore, the *Jones* Court found that based upon the wording of the statute at issue which specified elements of different crimes established three separate offenses. As such, the separate offenses must be charged by the indictment, proven beyond a reasonable doubt and submitted to the jury for a verdict. Here, the statutory provision is narrowly constructed to enhance a sentence when a firearm is used to kill someone in connection with a narcotics trafficking scheme. Section 924(j) is qualitatively different than the carjacking statute in *Jones* as it identifies sentencing factors, not elements of crimes to be proven.

*Pena–Gonzalez,* 62 F.Supp.2d at 374. Thus, the *Pena–Gonzalez* court found that the "*Jones* Principle" was inapplicable when the statute clearly defined the factors in question as sentencing enhancements.

### 5. The teachings of subsequent decisions

In summary, the few Circuit Courts of Appeals to consider the question have split on the import of *Jones*. Indeed, the Fifth Circuit Court of Appeals seems to be rent by an internal split over whether *Jones* announces a new rule or is merely applicable to its facts. This court finds more persuasive those circuit court decisions reading *Jones* to raise only constitutional concerns, not announce a new rule of general application, and to find those constitutional concerns to be determinative only when a statute does not clearly delineate certain factors as sentencing enhancements, particularly in the face of traditional treatment of a statutory factor, such as drug quantity, as a sentencing enhancement. The district court decisions consistently read the "*Jones* Principle" to require treatment of statutory factors as elements of offenses only when it is unclear whether the statute itself treats the factors as elements or sentencing enhancements. When it is clear that the statute treats factors as sentencing enhancements, or the factor in question has traditionally been treated as a sentencing enhancement rather than an element of the offense, the district courts have concluded that the "*Jones* Principle" does not come into play.

### III.  CONCLUSION

In light of these precedents and the *Jones* decision itself, this court concludes that the "*Jones* Principle" is not yet the "*Jones* Rule." What *Jones* does is erode the certainty of the rule that "elements" must be determined by a jury, but "sentencing factors" may be subject to non-jury determinations. The "*Jones* principle" would eliminate the distinction to the extent that, whether it is defined as an element of the offense or not, "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." However, the majority in *Jones* did not inaugurate this principle as a new rule or specifically end the current distinction between "elements" and "sentencing factors." Instead, the *Jones* majority adhered to that distinction by framing its discussion in terms of whether the subdivisions of § 2119 stated separate offenses or sentencing factors, noting the importance of the distinction, *see Jones,* 526 U.S. at ——, 119 S.Ct. at 1219 ("Much turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that the elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt."), and ultimately holding that § 2119 defined three offenses. *See id.* at ——, 119 S.Ct. at 1228.

What should this court do in light of *Jones* when confronted with a case, such as this one, charging a violation of or a conspiracy to violate § 841, in which the quantity of drugs increases the range of sentencing maximums and specifically raises the sentencing minimums? Contrary to the conclusion of some of the decisions of the Fifth Circuit Court of Appeals discussed above, this court concludes that *Jones* does not compel the court to do anything, because *Jones* does not directly answer the question; *Jones* only raises a "constitutional doubt" about the answer. What a court in such a position is compelled to do, this court believes, is to follow *Almendarez–Torres* —which would direct the court to conclude that subsection (b) of § 841 provides only "sentencing enhancements" excluded from the constitutional requirements applicable to "elements"— and to follow precedent of this circuit, which explicitly holds that drug quantities do not need to be pleaded or proved. *See, e.g., United States v. Holt,* 149 F.3d 760, 763 (8th Cir.1998) (under § 841, "[t]he

drug quantity is not an essential element of that offense," citing *United States v. Luster,* 896 F.2d 1122, 1126 (8th Cir.1990)); *United States v. Buford,* 108 F.3d *151, 154* (8th Cir.1997) ("We have held that drug quantity is not an essential element of the offense of possessing cocaine with the intent to distribute. *See United States v. Buchanan,* 985 F.2d 1372, 1377 (8th Cir. 1993)."). The question is likely to be resolved for the courts of the Eighth Circuit soon, either by the Eighth Circuit Court of Appeals or by the Supreme Court itself. *See United States v. Molina,* 172 F.3d 1048, 1057 (8th Cir.1999) (the appellate court would not reach the defendant's argument that treating drug quantity as a sentencing factor rather than an element under 21 U.S.C. § 841 violated due process, because the defendant failed to raise it in the district court), *petition for cert. filed,* (July 12, 1999) (No. 99–5238). In the interim, it seems inappropriate for this district court to attempt to anticipate what either the Supreme Court or the Eighth Circuit Court of Appeals will do on the basis of a 5–4 Supreme Court decision that specifically states that it *does not* establish a new rule. However attractive the "*Jones* Principle" may be, it has not yet ripened into the "*Jones* Rule."

**THEREFORE,** defendant's request for inclusion injury instructions of an element of the conspiracy offense requiring the government to prove and the jury to find the drug quantity involved in the conspiracy in order to convict the defendant is **denied.**

**IT IS SO ORDERED.**