**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Alvin DAVIS, Defendant–
Appellant.**

**No. 98–4555.**

United States Court of Appeals,
Fourth Circuit.

Argued May 3, 1999.

Decided July 13, 1999.

**ARGUED:** John Herman Hare, Assistant Federal Public Defender, Columbia, South Carolina, for Appellant. Eric William Ruschky, Assistant United States Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey, United States Attorney, Columbia, South Carolina, for Appellee.

Before MURNAGHAN, LUTTIG, and KING, Circuit Judges.

Vacated and remanded by published opinion. Judge LUTTIG wrote the opinion, in which Judge MURNAGHAN and Judge KING joined.

## OPINION

LUTTIG, Circuit Judge:

John Alvin Davis was charged in federal court, under the Assimilative Crimes Act, with failure to stop his car when signaled by a law enforcement vehicle, in violation of South Carolina law, while on a military base within the special territorial jurisdiction of the United States. He pled guilty and was sentenced to nine years in prison under a provision of the South Carolina law which applies in cases in which "great bodily injury resulted." Because whether great bodily injury resulted was an offense element that was not charged in the indictment, we vacate Davis's sentence and remand for resentencing.

### I.

On September 19, 1997, John Alvin Davis was driving his gray 5–series BMW down a road on the premises of Fort Jackson, an Army base in Columbia, South Carolina, when a military police officer clocked him speeding. The military police officer pursued Davis in his patrol car and turned on his lights and siren. Davis initially pulled over, but then made a U-turn and sped past the officer. A high-speed chase ensued, at speeds reaching 95 miles per hour. In the course of the chase, Davis exited the premises of Fort Jackson and entered a residential area of Columbia. There, as Davis was driving down the center turn lane of a two-way street, his car collided with a car driven by Beryl Harris. Davis then abandoned his car and fled on foot; when he was eventually caught, he attempted to resist arrest. As a result of the accident, Harris, the driver of the other car, was left with a number of serious and permanent injuries.

Davis was subsequently prosecuted in both federal and state court. Davis was

prosecuted in state court for leaving the scene of an accident. *See* S.C.Code § 56–5–1210(A)(2). He pled guilty and was sentenced to ten years in prison and a $1,000 fine, suspended upon service of three years, and five years of probation. Of more relevance here, Davis was also prosecuted in federal court under the Assimilative Crimes Act, which provides that any individual who commits a crime "within or upon" an area of exclusive federal jurisdiction which would be punishable if committed within the jurisdiction of the state in which the exclusive federal territory is located "shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13. Davis was charged with failure to stop his car when signaled by a law enforcement vehicle. *See* S.C.Code § 56–5–750. He again pled guilty and was sentenced to nine years in prison, three years of supervised release, a special assessment in the amount of $100, and restitution to Harris in the amount of $88,034.98. From that sentence, Davis now appeals.

## II.

■ Appellant contends that the district court erroneously sentenced him under S.C.Code § 56–5–750(C)(1), the provision of the South Carolina failure-to-stop statute which applies in cases in which "great bodily injury resulted."[1] Appellant argues that whether great bodily injury resulted from his failure to stop was an element of

the offense, rather than a mere sentencing factor, and that, because his indictment did not allege that great bodily injury resulted, he did not plead guilty, and therefore should not have been sentenced, under § 56–5–750(C)(1). We agree, and therefore remand for resentencing.

■ "Much turns on the determination that a fact is an element of an offense rather than a sentencing consideration." *Jones v. United States,* — U.S. —, ——, 119 S.Ct. 1215, 1219, 143 L.Ed.2d 311 (1999). If a fact is an offense element, it must be charged in the indictment and, if the defendant chooses to proceed to trial, it must be proven beyond a reasonable doubt. If, on the other hand, a fact is a mere sentencing consideration, it need not be raised until sentencing and need be proven only by a preponderance of the evidence.

■ Whether a fact is an offense element or a sentencing consideration is a matter of statutory interpretation. *See Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 1223, 140 L.Ed.2d 350 (1998) (noting that, in determining whether a fact is an offense element, "we look to the statute's language, structure, subject matter, context, and history—factors that typically help courts determine a statute's objectives and thereby illuminate its text"). Some statutes explicitly identify a particular fact as a sentencing consideration, *see, e.g., McMillan v. Pennsylvania,*

---

1. In relevant part, S.C.Code § 56–5–750 states as follows:

 (A) In the absence of mitigating circumstances, it is unlawful for a motor vehicle driver, while driving on a road, street, or highway of the State, to fail to stop when signaled by a law enforcement vehicle by means of a siren or flashing light....
 (B) A person who violates the provisions of subsection (A):
 (1) for a first offense where no great bodily injury or death resulted from the violation, is guilty of a misdemeanor and, upon conviction, must be fined not less than five hundred dollars or imprisoned for not less than ninety days nor more than three years ....; or

 (2) for a second or subsequent offense where no great bodily injury or death resulted from the violation, is guilty of a felony and, upon conviction, must be imprisoned for not more than five years....
 (C) A person who violates the provisions of subsection (A) and when driving performs an act forbidden by law or neglects a duty imposed by law in the driving of the vehicle:
 (1) where great bodily injury resulted, is guilty of a felony and, upon conviction, must be imprisoned for not more than ten years; or
 (2) where death resulted, is guilty of a felony and, upon conviction, must be imprisoned for not more than twenty-five years.

477 U.S. 79, 82, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (interpreting Pennsylvania statute expressly stating that "[p]rovisions of this section shall not be an element of the crime"); others, such as the one before us, do not.

No South Carolina court has yet ruled on whether the fact that great bodily injury resulted is an offense element or a sentencing factor in § 56–5–750(C)(1). The United States Supreme Court, however, recently addressed the issue of whether the fact that serious bodily injury resulted was an offense element or a sentencing factor in a similar statute, albeit a federal one. *See Jones,* 119 S.Ct. at 1215. In *Jones,* the Court was interpreting the federal carjacking statute, which read at the time of conviction as follows:

> Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
> (1) be fined under this title or imprisoned not more than 15 years, or both,
>
> (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
>
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

18 U.S.C. § 2119 (1988 Supp. V). By a 5–4 majority, the Court held that the fact that serious bodily injury resulted was an offense element, rather than a mere sentencing factor. *See Jones,* 119 S.Ct. at 1217, 1218. In so concluding, the Court engaged in a three-step inquiry.

First, the Court parsed the text of the statute. *See id.* at 1219–20. It began by recognizing that the serious bodily injury provision was contained in a separate subsection from the first section of the statute, in which the primary elements of the crime were listed, and therefore "ha[d] a look to it" that suggested that serious bodily injury was merely a sentencing factor. *Id.* at 1219. However, the Court concluded that this appearance was deceptive for two reasons. The Court began by observing that subsection (2)—the provision containing the serious bodily injury requirement—established "steeply higher penalties" than subsection (1)—the provision for cases not involving injury or death. *Id.* at 1218. The Court added that this "steeply higher" penalty range was conditioned on a "further fact"—namely, whether serious bodily injury occurred—which was "quite as important" as the primary elements of the crime. *Id.* The Court then noted that the subsection containing the serious bodily injury requirement was not really a separate section, because the first clause of the statute would constitute an incomplete sentence without it. *See id.* at 1219–20.

Second, because the "text alone does not justify any confident inference," the Court looked to extrinsic sources to determine Congress' intent. *Id.* at 1220–22. The Court began by considering other statutes, concluding that Congress has frequently, though by no means always, treated "serious bodily injury" as an offense element in other contexts. *See id.* at 1220–21. Although the statute it was interpreting was a federal one, the Court noted that bodily injury was often an offense element in analogous state statutes as well. *See id.* at 1221–22. The Court also considered the legislative history of the statute, but ultimately concluded that it was indeterminate on the issue. *See id.* at 1222–23.

Third, the Court asserted that, because its analysis under the first two steps left open "the possibility" that serious bodily injury was a sentencing factor, the statute should nevertheless be construed as requiring that serious bodily injury be charged as an offense element under the canon of constitutional avoidance. *See id.* at 1222–28. The Court reasoned that treating "any fact (other than a prior con-

viction) that increases the maximum penalty for a crime" as a sentencing factor, rather than as an element of the offense, would raise concerns involving both Fifth Amendment due process and the Sixth Amendment right to a jury. *Id.* at 1224 n. 6. Focusing on the Sixth Amendment, the Court discussed a variety of historical evidence suggesting that "the relative diminution of the jury's significance would merit Sixth Amendment concern." *See id.* at 1224–26. Noting that the precedent on whether such a diminution would rise to the level of a constitutional violation was "not dispositive," the Court applied the avoidance canon, and therefore concluded that serious bodily injury should be read as an offense element. *Id.* at 1228.[2]

Applying the analysis of *Jones* to this case, we conclude that whether great bodily injury resulted should be construed as an offense element, rather than a sentencing factor, for purposes of § 56–5–750(C)(1). First, we conclude, albeit with some uncertainty, that the text of § 56–5–750(C)(1) suggests that great bodily injury is an offense element. We recognize that subsection (C)(1), perhaps even more than subsection (2) of the carjacking statute at issue in *Jones,* "has a look to it" that suggests that it is a sentencing provision. As a structural matter, subsection (C)(1) is a freestanding provision, unlike subsection (2) in the carjacking statute, which was necessary for the statute to read as a complete sentence. Indeed, at first glance, subsection (A) of the statute, which states that "it is unlawful" for a driver to fail to stop, appears to define the offense, whereas subsections (B) and (C), which both begin, "A person who violates the provisions of subsection (A) . . . ," appear to establish the penalty for the offense. However, like subsection (2) of the carjacking statute as compared with subsection (1), subsection (C)(1) establishes a "steeply higher penalty" than subsection (B): namely, mandatory imprisonment of

up to 10 years, as opposed to a fine of at least $500 or imprisonment of between 90 days and three years (in the case of a first-time offender under subsection (B)(1)) or mandatory imprisonment of up to only five years (in the case of a repeat offender under subsection (B)(2)). Further, subsection (C)(1), like subsection (2) of the carjacking statute, conditions its steeply higher penalty on a "further fact" that is "quite as important" as the other offense elements. Indeed, it conditions that penalty on not one, but two further facts: first, that the individual have, "when driving[,] perform[ed] an act forbidden by law or neglect[ed] a duty imposed by law in the driving of the vehicle," and second, that great bodily injury have resulted.

Our tentative conclusion that great bodily injury—and indeed performing a legally forbidden act or neglecting a legally imposed duty—is an offense element is bolstered by two further textual observations. The mere fact that subsection (C)(1) opens with the phrase, "A person who violates the provisions of subsection (A)," we do not believe is conclusive as to whether the subsequent requirements in that subsection are purely punitive in nature. To the contrary, subsection (C)(1) can be read as simply incorporating the offense element contained in subsection (A), by way of shorthand reference, as one of *three* offense elements in subsection (C)(1), especially because the "who violates" clause is coordinate with the "when driving performs an act" clause. And, subsection (C)(1) states that such an individual who meets the criteria of the subsection "is guilty of a felony." This phrase, not unlike the "is unlawful" language of subsection (A), suggests that subsection (C)(1) not only establishes a penalty, but also defines the scope of a separate, though related, crime to the one defined in subsection (A), and therefore establishes the elements of

---

**2.** Both Justice Stevens and Justice Scalia wrote one-paragraph separate concurrences, each emphasizing the Sixth Amendment concerns. *See Jones,* 119 S.Ct. at 1228–29 (Stevens, J., concurring); *id.* at 1229 (Scalia, J., concurring).

that distinct crime.[3]

Second, we conclude, again with less than absolute certainty, that what few extrinsic sources there are also suggest that great bodily injury is an offense element for purposes of § 56–5–750(C)(1). As the Court noted in *Jones*, both Congress and a number of states have defined bodily injury as an offense element in other contexts. Perhaps the closest parallel in South Carolina is the state's driving-under-the-influence statute, which reads in relevant part as follows:

> Any person who, while under the influence of alcohol, drugs, or the combination of alcohol and drugs, drives a vehicle and while driving does any act forbidden by law or neglects any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes great bodily injury or death to any person other than himself, is guilty of a felony and upon conviction must be punished [by a mandatory fine and mandatory imprisonment].

S.C.Code § 56–5–2945(A). The Supreme Court of South Carolina has repeatedly held, albeit conclusorily, that this statute sets forth three offense elements: driving under the influence, doing any legally forbidden act or neglecting a legally imposed duty, and causing great bodily injury or death. *See State v. Easler*, 322 S.C. 333, 357, 471 S.E.2d 745 (1996); *State v. Cribb*, 310 S.C. 518, 523, 426 S.E.2d 306 (1992); *State v. Grampus*, 288 S.C. 395, 396–97, 343 S.E.2d 26 (1986). Although the driving-under-the-influence statute is self-contained in a single section, rather than

spread out over a series of separate subsections like the failure-to-stop statute, we find the South Carolina Supreme Court's interpretation of that statute persuasive, if not compelling, in view of the virtually identical language of the two statutes, with regard both to the requirement of great bodily injury and the additional requirement of performing a legally forbidden act or neglecting a legally imposed duty.

■ Although we believe that the text and extrinsic sources of the type identified in *Jones* support the conclusion that great bodily injury is an offense element for purposes of § 56–5–750(C)(1), we readily acknowledge that neither the text nor extrinsic sources *compel* such a conclusion. It is for precisely that reason, however, that we conclude, under the third step of the *Jones* analysis, that great bodily injury must be construed as an offense element under the canon of constitutional avoidance. At least one of the constitutional concerns identified in *Jones* is at issue here: namely, whether allowing whether great bodily injury resulted to be proven at the sentencing stage by a mere preponderance of the evidence would violate appellant's right to due process, and specifically his right to fair notice.[4] In order to avoid resolving this constitutional question, we conclude that great bodily injury was an offense element for purposes of § 56–5–750(C)(1), and therefore that, because appellant's indictment did not allege that great bodily injury resulted, appellant should not have been sentenced under § 56–5–750(C)(1).[5]

---

3. We recognize, however, that the phrase "is guilty of a felony" could be viewed not as serving to define a separate crime, but rather merely serving to distinguish subsections (B)(2) and (C) from subsection (B)(1), which states that a first–time offender who fails to stop in a case not involving bodily injury or death "is guilty of a misdemeanor."

4. Of course, the due process interest implicated in this case, unlike that in *Jones*, is that protected by the Fourteenth Amendment, rather than the Fifth.

5. The government argues, in the alternative, that, despite the fact that appellant's indictment charged him only with "unlawfully and willfully... fail[ing] to stop [for a police officer,]" J.A. at 8, the indictment was nevertheless sufficient to charge him under subsection (C)(1) because it contained a citation to subsection (C)(1) and also stated on its face that the maximum sentence for the charged count was ten years in prison, *see id.* An indictment, however, must contain all of the elements of the charged offense and fairly inform a defendant of the charges against him.

Because appellant's indictment alleged only the offense elements contained in § 56–5–750(A), and because appellant therefore pled guilty only to a violation of that section, we vacate the sentence erroneously imposed by the district court under § 56–5–750(C)(1), and remand for resentencing under § 56–5–750(B)(2), the applicable sentencing provision for repeat offenders such as appellant.[6]

### III.

In addition, appellant contends that, irrespective of the applicable statutory maximum sentence under South Carolina law, the district court erred by refusing to apply the federal sentencing guideline for obstruction of justice, U.S.S.G. § 2J1.2, as the most analogous federal sentencing guideline, and by instead sentencing him under 18 U.S.C. § 3553(b).

 In cases such as this one, in which there is no directly applicable federal sentencing guideline, a district court is obligated to apply the "most analogous offense guideline"; however, in the absence of a "sufficiently analogous guideline," the district court may instead apply the general provisions of 18 U.S.C. § 3553(b). U.S.S.G. § 2X5.1. To be the "most analogous offense guideline," a guideline need not be a "perfect match" with the conduct to which the guideline is being applied. *United States v. Terry,* 86 F.3d 353, 358 (4th Cir.1996).[7]

In determining whether to apply the obstruction-of-justice guideline, the district court began by reasoning that the conduct at issue in this case was insufficiently analogous to any of the statutory offenses, such as bribery, to which the obstruction guideline is directly applicable. *See* J.A. at 66–67. However, the district court went on to state, and subsequently reiterated, that the conduct at issue in this case was insufficiently analogous on the more general ground that it resulted in the injury to Harris, which was not committed in order to obstruct justice. *See id.* at 69–70, 72. The district court thus appears to have premised its conclusion that the obstruction guideline was insufficiently analogous, at least in part, on the assumption that it was sentencing appellant for the great bodily injury to Harris, as well as for the initial failure to stop. On remand, there-

---

*See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). As this court has consistently held for over sixty years, "[i]t is elementary that every ingredient of crime must be charged in the bill, a general reference to the provisions of the statute being insufficient." *Hale v. United States,* 89 F.2d 578, 579 (4th Cir.1937); *see also United States v. Pupo,* 841 F.2d 1235, 1239 (4th Cir.1988) (en banc) (same); *United States v. Hooker,* 841 F.2d 1225, 1227–28 (4th Cir.1988) (en banc) (same).

Further, assuming that the indictment in this case were sufficient to charge appellant under subsection (C)(1), appellant could not be said to have entered a valid guilty plea under that subsection, because the district court, when advising appellant of the "nature of the charge" against him, Fed. R.Crim. P. 11(c)(1), twice failed to include great bodily injury (or performing a legally forbidden act or neglecting a legally imposed duty) in listing the elements of the crime with which appellant was charged, *see* J.A. at 17, 24.

**6.** Subsection (B)(2), unlike subsection (C)(1), contains no additional offense elements beyond those in subsection (A). Any argument that whether the defendant is a repeat offender is an offense element is foreclosed by the Supreme Court's recent decision in *Almendarez–Torres. See Almendarez–Torres,* 118 S.Ct. at 1222.

**7.** This court has never stated the standard of review for a district court's decision, as here, that there is no sufficiently analogous guideline under U.S.S.G. § 2X5.1. Ordinarily, of course, a district court's choice of the applicable sentencing guideline is reviewed *de novo. See, e.g., United States v. Lambert,* 994 F.2d 1088, 1091 (4th Cir.1993). At least one of our sister circuits, however, has concluded that a district court's determination as to whether there is a sufficiently analogous guideline for purposes of U.S.S.G. § 2X5.1 is entitled to "due deference" because it involves the application of a guideline to the facts of the case. *United States v. Cefalu,* 85 F.3d 964, 968 n. 6 (2d Cir.1996). For purposes of this opinion, we assume, without deciding, that the Second Circuit's "due deference" standard is applicable.

fore, the district court should determine whether the obstruction guideline was sufficiently analogous to only appellant's conduct in failing to stop, and if so, it should apply that guideline.

## CONCLUSION

We vacate the sentence imposed by the district court and remand for resentencing pursuant to S.C.Code § 56–5–750(B)(2).

*VACATED AND REMANDED.*