**UNITED STATES of America,
Appellee,**

v.

**Kevin C. WILLIAMS, Appellant.**

**No. 98–3083.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 9, 1999.

Decided Oct. 26, 1999.

Beverly G. Dyer, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A. J. Kramer, Federal Public Defender.

Thomas S. Rees, Assistant U.S. Attorney, argued the cause for appellee. With him on the briefs were Wilma A. Lewis, U.S. Attorney, John R. Fisher and Elizabeth Trosman, Assistant U.S. Attorneys.

Before: WALD, SILBERMAN and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

In *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Supreme Court held that a factor that increases a defendant's sentence under the federal carjacking statute is an element of the crime that the jury must find beyond a reasonable doubt, rather than a sentencing factor to be decided by the sentencing judge. In this case, a jury convicted Appellant of possessing a detectable amount of cocaine base with intent to distribute in violation of 21 U.S.C. § 841. Appellant argues that *Jones* requires us to reverse the district court's ruling that the quantity of drugs he possessed is a sentencing factor, not an element of the offense. Concluding that *Jones*' effect on section 841 is not sufficiently clear to permit a panel of this court to reconsider our precedent holding that quantity is a sentencing factor, not an element of the offense, and finding Appellant's other claims without merit, we affirm.

I

Section 841(a) makes it unlawful for any person to possess with intent to distribute a controlled substance. 21 U.S.C. § 841(a)(1). Subsection (b)(1) of section 841 specifies different penalties depending on the amount and type of controlled substance at issue: ten years to life for fifty grams or more of crack; five to forty years for five grams or more of crack; and up to twenty years for less than five grams of crack.

The difference in the amount of drugs attributed to Appellant Kevin Williams at different stages of his prosecution forms the basis of his *Jones* argument. The grand jury indicted him for possessing with intent to distribute fifty grams or more of cocaine base. The jury was instructed that it could convict if it found he possessed with intent to distribute a detectable or measurable amount. The district court found that he possessed sixty-six grams and imposed a sentence of ten years under the Sentencing Guidelines. Relying on *Jones,* Williams argues that quantity is an element of a section 841 offense and that because the jury was instructed that it could convict him if it found that he possessed a "detectable" or "measurable" amount of cocaine base, the district court erred by imposing a penalty for possessing more than fifty grams.

■ Before considering Williams' *Jones* argument, we must first address the Government's contention that we need not reach the issue at all. Specifically, the Government claims that Williams failed to preserve the issue for appeal because he never presented it to the district court. We disagree. Following the close of evidence, Williams moved for judgment of acquittal, expressly arguing that quantity is an element of the offense and that the Government had failed to prove that the quantity of drugs at issue exceeded fifty grams. Denying the motion, the district court ruled that quantity "is not an essential element ... of the offense charged under our case law." After addressing several other issues, the district court reiterated that quantity is not an element of a section 841 offense. To be sure, defense counsel lodged no objection to the district court's "detectable amount" jury instructions. But having had his argument that quantity is an element of the offense twice rejected by the district court, Williams had no obligation to go through the futile exercise of interposing the same objection to the jury instructions.

■ The Government urges us not to reach Williams' argument for a second reason. It claims that even if Williams were correct that quantity is an element of a section 841 offense, his sentence would not be affected because, as calculated by the district court under the Sentencing Guidelines, it fell well below section 841's twenty-year maximum for defendants who (like Williams) are convicted of possessing a detectable or measurable amount of crack. *See* 21 U.S.C. § 841(b)(1)(C). Under these circumstances, the Government argues, the Supreme Court's recent decision in *Edwards v. United States*, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998), bars us from addressing Williams' argument. Again, we disagree.

In *Edwards*, the defendants were convicted of conspiring to possess with intent to distribute cocaine *or* crack. *Id.* at 513, 118 S.Ct. 1475. Applying the Sentencing Guidelines, the district judge calculated defendants' sentences based on his finding that the illegal conduct involved both cocaine *and* crack. Defendants argued that because the jury had convicted them of participating in a cocaine *or* crack conspiracy, the district judge erred by sentencing them for crack-related conduct rather than for a cocaine-only conspiracy. The Court declined to reach the merits of this argument since, even were it correct, the defendants' sentences would not have been affected. This was so because the Sentencing Guidelines permitted the district judge to consider crack-related conduct in calculating defendants' sentences regardless of whether the jury found a cocaine-only conspiracy or a crack and cocaine conspiracy, and defendants' sentences were shorter than the statutory maximum for cocaine-only conspiracies. *Id.* at 514–15, 118 S.Ct. 1475.

In this case, the Government's entire *Edwards* argument is set forth in two rather cryptic sentences: "[A]ppellant could have received a maximum sentence of 20 years even if no specific quantity of crack had been proven. His ten year sentence was well below that maximum, and, here, as in *Edwards,* the constitutional issue is not even presented." The Government apparently is arguing that regardless of whether Williams is correct that quantity is an element of a section 841 offense, the district judge would retain authority to determine quantity under the Sentencing Guidelines, and since Williams' Guidelines sentence was less than the statutory maximum for possession with intent to distribute a detectable or measurable amount of crack, we have no reason to reach the merits of his argument.

The Government's contention rests on the assumption that under *Edwards* a defendant can show he was harmed *only* if his sentence exceeds the statutory maximum that would have been applicable absent the alleged error. But *Edwards* itself recognized another way defendants could establish harm: by showing that the crack-related conduct was not part of the same course of conduct as the cocaine-only conspiracy found by the jury. 523 U.S. at 515–16, 118 S.Ct. 1475. Identifying still a third type of harm, the defendants in *Edwards* argued that "the judge *might* have made different factual findings" if he had accepted their argument as correct. *Id.* The Court never reached this latter argument, however, because defendants "seem to have raised their entire [cocaine-only conspiracy] argument for the first time in the Court of Appeals." *Id.* Not so here. Williams expressly argued in the district court that quantity is an element of the offense to be decided by the jury. *See supra* at 102–03. If Williams turns out to be correct, the jury's finding that he possessed a "detectable" amount might very well have influenced the district court's quantity determination under the Guidelines, possibly resulting in a shorter sentence. Because *Edwards* never addressed this situation, we do not think it bars our consideration of Williams' argument. We thus save for another day (when the matter is fully briefed) consideration of *Ed-*

*wards'* precise scope and turn to the merits of Williams' argument.

## II

■ Announced in the final days of the Supreme Court's most recent term, *Jones* considered whether a factor that substantially increases a defendant's sentence under the federal carjacking statute is an element of the offense or a matter to be decided by the district court at sentencing. As the Court pointed out, this seemingly semantic distinction has enormous practical significance. "[E]lements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." 526 U.S. at ——, 119 S.Ct. at 1219. Sentencing factors may be determined by the district court.

> The statute at issue in *Jones* provided: Whoever ... takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
>> (1) be fined under this title or imprisoned not more than 15 years, or both,
>>
>> (2) if serious bodily injury ... results, be fined under this title or imprisoned not more than 25 years, or both, and
>>
>> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

18 U.S.C. § 2119 (1992). After a jury convicted Jones of carjacking, the district court found that serious bodily injury had occurred and imposed a longer sentence based on that finding. On appeal, Jones argued that "serious bodily injury" was an element of the crime that had to be submitted to the jury. According to the Government, the statute created a single offense—carjacking—and "serious bodily injury" was a sentencing factor for the judge, not the jury.

The Supreme Court agreed with Jones. Analyzing the structure of the statute and considering that serious bodily injury has historically been considered an element of a crime, the Court read the statute to create three separate offenses: carjacking with no aggravating factors (maximum penalty of fifteen years); carjacking resulting in serious bodily injury (maximum penalty of twenty-five years); and carjacking resulting in death (maximum penalty of life imprisonment). Serious bodily injury, the Court ruled, is an element of the offense, meaning that the higher penalty for a carjacking offense involving serious bodily injury may be imposed only if the indictment alleges such injury and the jury finds it beyond a reasonable doubt.

Characterizing its interpretation as the "fairest" reading of the statute, the Court nonetheless "recognize[d] the possibility of the other view"—*i.e.*, interpreting the statute to make serious bodily injury a sentencing factor. 526 U.S. at ——, 119 S.Ct. at 1222. But adopting that "other view," the Court said, would have required it to address a "serious constitutional question[ ] on which precedent is not dispositive," a question the Court described as follows: "when a jury determination has not been waived, may judicial factfinding by a preponderance support the application of a provision that increases the potential severity of the penalty for a variant of a given crime?" *Id.* at ——, ——, 119 S.Ct. at 1228, 1224. Faced with interpreting a statute "susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided," the Court found that it had a "duty" to adopt the latter construction. *Id.* at ——, 119 S.Ct. at 1222 (internal quotation marks and citation omitted).

*Jones* has thus far been applied by two of our sister circuits. In *United States v. Davis,* the Fourth Circuit faced a *Jones* challenge to a South Carolina law that increased the maximum penalty for failing to stop when signaled by a police officer if serious bodily injury occurred. 184 F.3d 366 (4th Cir.1999). The court held that

serious bodily injury is an element of the offense because any other interpretation of the statute would present the constitutional question posed in *Jones*. *Id.* at 368–72. In *United States v. Nuñez*, the Fifth Circuit held that *Jones* "foreclose[d]" the Government's argument that use of a deadly or dangerous weapon, which raised the maximum penalty for the offense of forcibly resisting a federal officer from three to ten years, was a mere penalty provision. 180 F.3d 227, 233–34 (5th Cir.1999).

Like the penalty provisions at issue in *Jones, Davis*, and *Nuñez*, section 841 penalties vary depending upon the circumstances of the offense. Subsection (a)(1) provides that "it shall be unlawful for any person knowingly or intentionally ... [to] possess with intent to manufacture, distribute, or dispense, a controlled substance." Subsection (b) provides that "any person who violates subsection (a) of this section shall be sentenced ..." and goes on to set forth a wide range of penalties depending on the quantity and type of drug involved as well as other aggravating factors, such as serious bodily injury and recidivism. Quantity significantly affects the severity of the penalty. Defendants convicted of possessing with intent to distribute fifty grams or more of crack face ten years to life, while those convicted of possessing fewer than five grams face a maximum of twenty years.

Williams argues that because quantity so dramatically affects the severity of section 841 penalties, allowing the judge to determine quantity implicates the unsettled constitutional issue identified in *Jones*. Therefore, he argues, we must consider whether the statute is susceptible to an alternative construction that would make quantity an element of the offense. The Government responds that, unlike the carjacking statute, section 841 unambiguously makes quantity a sentencing factor and that, so read, the statute presents no serious constitutional concerns.

Were we writing on a clean slate, *Jones* would require us to resolve this issue by asking whether treating quantity as a sentencing factor raises "grave and doubtful constitutional questions," and if so, whether section 841 can be interpreted to make quantity an element of the crime. But our slate is not clean. Unlike the Fourth and Fifth Circuits, which had never interpreted the statutes challenged in those cases, this circuit did construe section 841 prior to *Jones* and squarely held that it makes quantity a sentencing factor, not an element of the offense. In *United States v. Patrick*, we noted "that the quantity of drug possessed is not a constituent element of the offense of possession with intent to distribute under 21 U.S.C. § 841(a). Quantity is relevant only to punishment; the district judge, and not the jury, makes this determination." 959 F.2d 991, 995–96 n. 5 (D.C.Cir.1992) (citations omitted). In *United States v. Lam Kwong–Wah*, we reiterated that we had "recently joined the majority of other circuits holding that the quantity of drugs involved in a conspiracy or distribution charge is not a basic element of the offense, but is rather a sentencing factor to be determined by the judge." 966 F.2d 682, 685 (D.C.Cir.1992) (citations omitted). The question, then, is whether *Jones* effectively overrules, *i.e.*, "eviscerate[s]," *Patrick* and *Lam Kwong–Wah*. *See Dellums v. United States Nuclear Regulatory Comm'n*, 863 F.2d 968, 978 n. 11 (D.C.Cir. 1988) (Silberman, J.). We think it does not.

To begin with, *Jones* never squarely held that the carjacking statute would have been unconstitutional had the Court been unable to interpret serious bodily injury as an element of the crime. *Jones* held only that the opposite reading—treating serious bodily injury as a sentencing factor—raised sufficient constitutional *doubt* to require the Court, if possible, to interpret the statute as it did. That the Supreme Court had doubts about the constitutionality of the carjacking statute, doubts that it never had to resolve, is simply too thin a reed to permit a panel of

this court to find similar doubts in a different statute and, based on those doubts, to depart from circuit precedent expressly interpreting the statute as making quantity a sentencing factor.

We are also reluctant to reexamine our precedent because it is not at all clear whether *Jones* applies broadly to all criminal statutes or is limited to the unique facts of that case. *Jones* represents only the latest in a series of seemingly conflicting cases addressing the sentencing factor versus element issue, and its attempt to distinguish, explain, and reconcile earlier cases leaves unresolved several questions that lead us to wonder about the precise scope of its holding.

The story begins with two cases that set forth the principles underpinning *Jones*. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), held that criminal defendants have a right to have the Government prove each element of a crime beyond a reasonable doubt. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), held that there are limitations on the state's power to circumvent *Winship* by redefining elements as sentencing factors. "[I]f *Winship* were limited to those facts that constitute a crime as defined by state law," the Court reasoned, "a State could undermine many of the interests that decision sought to protect.... It would only be necessary to redefine the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment.... *Winship* is concerned with substance rather than this kind of formalism." *Id.* at 698–99, 95 S.Ct. 1881.

Later cases retreated from the principle set forth in *Mullaney*. In *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), for instance, the Court held that a state could constitutionally define visible possession of a firearm, a fact that triggered a mandatory minimum sentence for certain enumerated offenses, as a sentencing factor to be determined by the sentencing judge, rather

than as an element of the offense. The Court noted that defendants' argument "would have at least more superficial appeal if [the judge's finding] exposed them to greater or additional punishment." *Id.* at 88, 106 S.Ct. 2411. But on the basis of the facts presented, the Court concluded that because the statute "gives no impression of having been tailored to permit the [sentencing factor] finding to be a tail which wags the dog of the substantive offense," it raised no constitutional issue. *Id.*

Building on *McMillan*, the Court held in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), that an immigration statute that enhances the maximum penalty on the basis of a judicial finding of recidivism raises no constitutional issues. This was especially so, the Court reasoned, because of the long tradition of treating recidivism as a sentencing factor. *Id.* at 243–44, 118 S.Ct. 1219. According to the Court, the only difference between the case before it and *McMillan* was that the finding of recidivism under the immigration statute altered the statutory *maximum*, while the finding of visible possession of a firearm affected the mandatory *minimum*. *Id.* at 243, 118 S.Ct. 1219. Observing that mandatory minimums often affect sentences more significantly than statutory maximums, the Court found this not to be a "determinative difference" between the two cases. *Id.* at 244–45, 118 S.Ct. 1219.

While *Jones* draws on the principles set forth in *Winship* and *Mullaney*, it does not question the Court's later conclusion in cases like *McMillan* and *Almendarez–Torres* that not "every fact with a bearing on sentencing must be found by a jury...." *Jones*, 526 U.S. at ——, 119 S.Ct. at 1226. *Jones* even declares that it "does not announce any new principle of constitutional law, but merely interprets a particular federal statute in light of a set of constitutional concerns that have emerged through a series of our decisions over the past quarter century." *Id.* at —— n. 11, 119 S.Ct.

at 1228 n. 11. By framing the unresolved constitutional issue as whether "any fact (*other than prior conviction*) that increases the *maximum* penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt," *Jones* leaves undisturbed the Court's previous holdings as to mandatory minimums (*McMillan*) and recidivism (*Almendarez–Torres*). *Id.* at —— n. 6, 119 S.Ct. at 1224 n. 6 (emphasis added).

Yet we are not at all sure that federal courts should treat as "unresolved" the potential constitutional issue lurking in every sentence-enhancing statute except those involving increased mandatory minimums and recidivism. For example, if quantity (like recidivism) has historically been treated as a sentencing factor, is the unresolved constitutional issue identified in *Jones* still implicated? Is it constitutionally significant that in section 841, quantity affects both mandatory minimums *and* maximums? Do section 841's penalty provisions, which extend for pages, cover topics ranging from death and serious bodily injury to water pollution on federal lands and date rape, and significantly affect sentence severity, suggest that the sentencing tail may be wagging the section 841 dog? *See McMillan*, 477 U.S. at 88, 106 S.Ct. 2411. And, if so, is examining the relationship between a dog and its tail any longer relevant in view of the fact that *Jones* mentions neither?

These unanswered questions, together with the fact that *Jones* never ultimately resolved the constitutional doubts it raised, convince us that *Jones* falls far short of "eviscerating" *Patrick* and *Lam Kwong–Wah*. We therefore remain bound by their holding that under section 841 quantity is a sentencing factor, not an element of the offense.

This leaves one remaining issue. Williams argues that if *Patrick* and *Lam Kwong–Wah* are binding, then *Jones* renders section 841 unconstitutional because the question of quantity is left to the sen-tencing judge. Since Williams failed to challenge the constitutionality of section 841 before the district court, we review for plain error. *See* Fed.R.Crim.P. 52(b); *Johnson v. United States*, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Williams must therefore establish (1) that there is "error," (2) that the error is "plain," and (3) that the error "affect[s] substantial rights." *Johnson v. United States*, 520 U.S. at 467, 117 S.Ct. 1544 (internal quotation marks omitted). Only if Williams can establish all three may we exercise our discretion to "notice a forfeited error, but only if . . . the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

Williams falls far short of satisfying this very heavy burden. Even with the benefit of *Jones*, it is hardly "plain" that section 841 is unconstitutional. As we indicated above, not only does *Jones* expressly declare that it "does not announce any new principle of constitutional law," but it is not at all clear whether *Jones* even applies to section 841. *See supra* at 106–07. Under these circumstances, we find no plain error.

### III

Having concluded that in this circuit quantity remains a sentencing factor in a section 841 offense, we turn to Williams' alternative argument. He claims that the district court never made a factual determination that the amount of drugs at issue was sixty-six grams but instead erroneously assumed that the jury had found that amount.

Williams was arrested after police officers discovered him with his hand in a gym bag that turned out to contain crack cocaine. The investigator who field-tested the drugs, Officer Ramadhan, testified at trial that he tested a total of sixty-six grams: twenty-two grams in nine small clear plastic bags and forty-four grams in two larger bags. The two arresting officers testified that when they arrested

Williams they found two large chunks of crack cocaine. Neither mentioned seeing an additional nine plastic bags of drugs, although one of the arresting officers identified the contents of an envelope that contained the items tested by Officer Ramadhan, including the nine small bags, as the same items that had been seized when Williams was arrested.

Arguing that the arresting officers' testimony conflicted with Officer Ramadhan's, that this inconsistency fatally undermined the Government's case, and that in any event there was insufficient evidence of possession to convict, Williams moved for judgment of acquittal at the close of the Government's case. Although the district court acknowledged that the testimony was potentially conflicting, it found that "there is certainly sufficient evidence as to the chain of custody and the type and quantity of drugs that were seized," and, while characterizing the Government's evidence of possession as "thin," it found sufficient evidence to submit the issue to the jury.

At sentencing, defense counsel again pointed out the inconsistency in the testimony with respect to the twenty-two grams, arguing that the gym bag contained only forty-four grams. The district court rejected Williams' argument:

> I am going to deny you any relief under the Sentencing Guidelines as to the issues about the difference in testimony of the police officers. . . . And whether or not they were in the possession of Mr. Williams, that was an issue for the jury as to their differences in testimony and whether they were convinced beyond a reasonable doubt that Mr. Williams was in actual possession or constructive possession of those drugs and the jury made that determination.
>
> Based upon all of the testimony after hearing, argument of counsel on each side, and experienced counsel tried the case for Mr. Williams in a good fashion trying to point out these inconsistencies and the failure of the evidence. *But*

*that was a jury issue I believe and it doesn't affect the Court now under the Guidelines because I will accept the jury's finding he was in possession knowingly of all of those drugs, which adds up to the 66 grams, instead of a lesser amount.*

Formally entering judgment against Williams, the district court adopted the factual findings in the presentence report. According to that report, a laboratory analysis of "the drugs recovered from defendant Williams determined same to be 66.49 grams of cocaine base. . . . [T]he total amount of drugs accountable to defendant Williams is 66.49 grams of cocaine base."

From this sequence of events, we think that the district judge did determine that Williams possessed sixty-six grams. He said as much at the sentencing hearing. He adopted the factual findings of the presentence report, which stated that Williams was accountable for sixty-six grams. And he sentenced Williams based on sixty-six grams.

Williams interprets the district court's oral ruling, particularly the last sentence, to mean that the court mistakenly believed that the jury had found that sixty-six grams of cocaine base were seized from the bag and that the court based its finding on that mistaken assumption. We disagree. To begin with, it defies logic that an experienced district judge, having ruled that quantity is not a matter for the jury but is instead a question for the court at sentencing, *see supra* at 102–03, would then turn around and impose sentence on the basis of an assumption that the jury had determined quantity. Moreover, we read the district court's words quite differently than does Williams. From the district court's comments in ruling on the motion for judgment of acquittal and at sentencing, it is clear that he thought the evidence that Williams possessed *any drugs at all* was thin. But once the jury found that Williams in fact possessed the drugs, the district court concluded that

there was sufficient evidence to attribute to Williams the entire amount, "which adds up to the 66 grams, instead of a lesser amount." Read in this context, the phrase "that was a jury issue I believe and it doesn't affect the Court now under the Guidelines" refers to possession, not quantity.

## IV

This brings us to Williams' final argument. He challenges the district court's denial of his motion to suppress the drugs seized when he was arrested.

Seven officers of the Metropolitan Police Department, executing a search warrant obtained on the basis of an informant's tip that guns and crack were present in an apartment at 1209 Valley Avenue in Southeast Washington, entered the apartment and found ammunition, handgun magazines, marijuana, and items often used in connection with drug distribution, including plastic bags, razor blades, and scales. Finding neither guns nor crack, they left. Speculating that they may have executed the warrant too early, five officers returned. When the door of the apartment was opened, they saw Williams moving away from them toward a back bedroom with his right arm "tucked ... close to his side.... like he was carrying something." Although the officers testified that they could not see what Williams was carrying, they said they suspected he might have had a gun. The two officers chased Williams into a back bedroom. Seeing Williams with his hand in a gym bag, the officers secured him and dumped the contents of the bag. Out fell two large chunks of crack. Williams was arrested.

■ Denying Williams' motion to suppress, the district court held that Williams lacked standing to challenge the seizure because he had no legitimate expectation of privacy in either the apartment or the bag and because he had voluntarily abandoned the drugs. Although Williams correctly points out that whether a defendant has a legitimate expectation of privacy "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing," *Minnesota v. Carter*, 525 U.S. 83, ——, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (1998) (internal quotation marks and citation omitted), he cannot escape the well-accepted rule that in order to demonstrate that the search violated his Fourth Amendment rights he must establish that he had a legitimate expectation of privacy in the area searched. *See id.* Moreover, an individual who abandons property forfeits any reasonable expectation of privacy in the property. *See United States v. Thomas*, 864 F.2d 843, 845–46 (D.C.Cir.1989).

■ Williams neither challenges the district court's determination that he had no legitimate expectation of privacy in the area searched nor argues that the district court erred in finding that he abandoned the drugs. Instead, he claims that the "police discovered the bag only as a result of the illegal seizure of Mr. Williams' person." Because Williams failed to argue either that the allegedly illegal seizure invalidated the abandonment or that he had some sort of privacy interest in the bag and therefore did not abandon the drugs by putting them in the bag, however, his claim that the police illegally "seized his person" is irrelevant. We therefore find no basis for questioning the district court's denial of the motion to suppress.

## V

Williams' conviction and sentence are affirmed.

*So ordered.*