**Hugo GALVIZ ZAPATA, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 01–2575.

United States Court of Appeals, Second Circuit.

Argued: May 3, 2005.

Decided: Dec. 6, 2005.

Norman Trabulus, Garden City, New York, for Petitioner–Appellant.

Elaine D. Banar, Assistant United States Attorney (Roslynn R. Mauskopf,

United States Attorney for the Eastern District of New York, on the brief, and Peter A. Norling, Assistant United States Attorney, of counsel), Brooklyn, New York, for Respondent–Appellee.

Before: SOTOMAYOR, B.D. PARKER, and WESLEY, Circuit Judges.

WESLEY, Circuit Judge.

Hugo Galviz Zapata appeals from the district court's denial of his petition for a writ of habeas corpus. Zapata presses an ineffective assistance of counsel claim. In his *pro se* petition of November 9, 2000, Zapata asserted that his trial counsel, Lisa Scolari, failed to file a notice of appeal after being instructed to do so. In an affidavit filed in support of the petition, Zapata also alleged that Scolari failed to consult with him regarding an appeal of his sentence. The district court subsequently appointed counsel to represent Zapata and held an evidentiary hearing on March, 9, 2001, at which both Zapata and Scolari testified. Zapata testified that he "told Ms. Scolari that [he] would like to appeal." The district court found Zapata not credible as to this assertion and credited Scolari's testimony that it was her professional practice to file a notice of appeal whenever a client expressed an interest in appealing. The court therefore denied petitioner's claim that Scolari failed to execute an appeal as directed but allowed supplemental briefing on any remaining claims raised in the petition.

In a post-hearing letter submission, Zapata disagreed with the district court's conclusion that he had never asked Scolari to file a notice of appeal but pointed out to the court that it had not addressed the additional claim in his *pro se* petition, at ¶ 7, that Scolari had not consulted with him about an appeal and had "abandoned" him after sentencing. The government asserted in response that Zapata had "now alter[ed] his position" but maintained that the petition should be denied because Scolari had no duty to consult with Zapata about an appeal. In a memorandum and order issued on August 22, 2001, the district court dismissed Zapata's petition. The district court concluded that, even assuming that Scolari did not consult with Zapata regarding an appeal, "petitioner is unable to demonstrate that his attorney had a duty to consult with him regarding his right to appeal, or that he would have appealed but for counsel's failure to perform that duty."

The district court's willingness to assume a fact that was a necessary predicate to the court's effective assistance of counsel analysis presents us with a troubling choice. If we accept the assumption, we must engage in extensive legal reasoning predicated on a fact not yet determined. If we reject the assumption, we must make an independent factual determination—an endeavor for which appellate courts are not optimally situated. Thus, we remand the case for further fact-finding to determine whether Scolari did in fact fail to consult with Zapata regarding an appeal.[1]

1. Zapata's petition also included a claim that he should be allowed to withdraw his guilty plea because it was not entered knowingly and voluntarily. As petitioner notes in his opening brief, that claim was withdrawn below and is not involved in this appeal. Pet'r Br. 5. On appeal, petitioner did argue that the district court erred in reaching and rejecting a claim under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435

(2000), which Zapata had petitioned to present through a direct appeal. Pet'r Br. 25. However, as petitioner points out in his reply brief, this contention no longer presents a dispute material to the ultimate issue of whether Zapata should be accorded a direct appeal because the Government concedes that, if Zapata's ineffective assistance argument succeeds, he will be entitled to a direct

Where an ineffective assistance of counsel claim involves an assertion that counsel failed to consult with the defendant about an appeal, the question is determined by whether "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or ... this particular defendant reasonably demonstrated to counsel that he was interested in appealing," *Roe v. Flores–Ortega,* 528 U.S. 470, 480, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), and whether "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, [defendant] would have timely appealed," *id.* at 484, 120 S.Ct. 1029. *Flores–Ortega* instructs that we " 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct,' " *id.* at 477, 120 S.Ct. 1029 (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), and that "courts must take into account all the information counsel knew or should have known," *id.* at 480, 120 S.Ct. 1029. Thus, in order to succeed on his ineffective assistance of counsel claim, Zapata must show that (a) counsel knew or should have known of a nonfrivolous ground for appeal (and thus had a duty to consult), (b) counsel breached this duty by failing to consult, and (c) counsel's breach prejudiced the petitioner.

On July 7, 1999, Zapata pled guilty to conspiring to distribute and to possess with intent to distribute heroin as proscribed by 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. His plea agreement did not explicitly identify any particular quantity of heroin but stated that Zapata would be subject to a mandatory minimum of ten years pursuant to 21 U.S.C. § 841(b)(1)(A)(i), which applies only to "1 kilogram or more" of heroin. The plea agreement also indicated that, in the absence of the ten year minimum, Zapata would have been subject to a Sentencing Guidelines' range of 87–108 months.[2] In his plea colloquy, Zapata did not admit to any quantity of drugs.

Zapata, relying on *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and *United States v. Williams,* 194 F.3d 100 (D.C.Cir.1999), asserts that there was a nonfrivolous ground for appeal. He notes that he was sentenced to a mandatory minimum—ten years—based on a drug quantity determined by the district judge employing the preponderance of the evidence standard at a sentencing hearing. Zapata stresses that he never admitted involvement with a specific quantity of heroin in his plea colloquy or plea agreement. He points out that the then-mandatory Sentencing Guidelines set a significantly lower punishment range for the conduct he did acknowledge. In essence, Zapata contends that, although *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), was not decided until one year after his plea, *Jones* and *Williams* signaled a growing concern that viewing the quantity of drugs involved in an offense as a sentencing factor and not as an element of the crime might raise serious Sixth Amendment concerns. Thus, Zapata asserts that the district court erred for, although the law in this circuit was clear at

---

appeal of his sentence on *Apprendi* grounds. Reply Br. 4 (citing Opp'n Br. 19–20).

**2.** In his plea agreement, Zapata committed to "not file an appeal ... of a sentence in the event that the Court imposes a sentence within or below the range of imprisonment set forth in paragraph 2" of the agreement. Paragraph 2 of the agreement sets forth the estimated Guidelines' range of the government, 87–108 months, but notes that § 841(b)(1)(A) requires a mandatory minimum.

the time of his plea (see *United States v. Monk,* 15 F.3d 25, 27 (2d Cir.1994), *overruled by United States v. Thomas,* 274 F.3d 655, 663 (2d Cir.2001) (*en banc*)), its foundation had already weakened such that an appeal on the grounds asserted by Zapata would not have been frivolous. Finally, Zapata claims that he suffered prejudice due to Scolari's alleged failure to consult. He argues that he would have appealed on the basis of this non-frivolous issue, as there was no risk, and perhaps some benefit, in pursuing an appeal of his sentence.

In response, the government argues that the district court correctly concluded that petitioner's counsel had no constitutional duty to consult with petitioner regarding an appeal as Zapata's contentions did not, at that time, present a non-frivolous ground for an appeal of his sentence. The government relies on *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), in which the Supreme Court held that a state sentencing guideline that imposed a mandatory minimum for possessing a firearm during the crime charged was a sentencing factor and not an element of the predicate offense. *See id.* at 85–86, 106 S.Ct. 2411. The firearm factor raised the mandatory minimum, but that minimum was within the sentencing ranges dictated for the underlying crime. *See id.* at 82 & n. 1, 106 S.Ct. 2411. The government argues that *Jones* clearly did not abrogate the holding in *McMillan* because the Court explicitly recognized that the mandatory minimum in *McMillan,* un-

like the mandatory minimum in *Jones,* did not increase the statutory maximum—a distinction also noted in *Apprendi* and *Williams. See Jones,* 526 U.S. at 242–43 & n. 6, 119 S.Ct. 1215; *see also Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348; *Williams,* 194 F.3d at 107. As a result, the government asserts that any claim to the contrary at the time of Zapata's sentencing would have been frivolous. Indeed, the government reminds us that this Court observed in a post-*Jones,* pre-*Apprendi* decision that "[i]t has been the settled law of this and other Circuits that in crimes charged under 21 U.S.C. § 841, the quantity of the drug involved is not an element of the offense to be determined by the jury beyond a reasonable doubt." *United States v. Thomas,* 204 F.3d 381, 383 (2d Cir.2000), *vacated, Thomas v. United States,* 531 U.S. 1062, 121 S.Ct. 749, 148 L.Ed.2d 653 (2001), *on remand, United States v. Thomas,* 274 F.3d 655 (2d Cir. 2001) (*en banc*). Finally, the government argues that the district court correctly concluded that petitioner was unable to establish prejudice because he could not show that, but for the alleged ineffective assistance of counsel, he would have appealed.

*Flores–Ortega* requires us to look backward at an area of federal criminal jurisprudence that has undergone a great deal of change in the last five years.[3] However, we see no need at this point to express a view as to the correctness of the district court's legal analysis. To do so would be

---

**3.** Indeed, our recent decisions in *United States v. Cordoba–Murgas,* 422 F.3d 65 (2d Cir.2005), and *United States v. Gonzalez,* 420 F.3d 111 (2d Cir.2005), issued after the parties' briefing in this matter, suggest a possible basis for concluding that Zapata's arguments about the inapplicability of the statutory minimum to his plea may not have been frivolous at the time Scolari could have conferred about the advisability of an appeal. Clearly,

Scolari would not have been informed by these decisions or by *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), in any discussions she would have had with Zapata. However, the legal issue is whether Zapata, properly informed of the state of the law at the time (including *Jones* and *Williams*), would have filed an appeal to be sentenced in accordance with the Guidelines and his factual admissions.

to address controverted legal issues that would be determinative for the petitioner *only if* the district court had concluded that Scolari failed to confer with Zapata about an appeal—a factual determination that the district court eschewed. The district court indicated that it would "assume for present purposes that Scolari did not consult with petitioner regarding an appeal." That assumption draws us to a task that might be avoided by findings of fact based on the evidentiary hearing already concluded. The district court strongly suggested following the evidentiary hearing that Zapata had failed to offer any proof supporting his failure to consult claim. Indeed, in a footnote in its decision, the court found that "Scolari's testimony at the hearing fail[ed] to support that claim" and noted specifically that "she was not asked whether she had a practice of consulting with her clients regarding an appeal."

If Zapata did in fact fail to elicit any evidence on the issue of Scolari's consultation with him, it might well be that the district court's legal analysis was unnecessary as Zapata bore the burden of establishing the factual predicate for his claim. *See Polizzi v. United States,* 926 F.2d 1311, 1321 (2d Cir.1991); *see also Williams v. United States,* 481 F.2d 339, 346 (2d Cir.1973) ("It is hornbook law ... that [under 28 U.S.C. § 2255] the burden of proof is on the party seeking relief."). However, we are wary of concluding, on the basis of a less-than-clear footnote, that the district court made a determinative finding of fact adverse to Zapata or was unable to conclude that Zapata had established a fact necessary to his claim. *Cf. DeMarco v. United States,* 415 U.S. 449, 450, 94 S.Ct. 1185, 39 L.Ed.2d 501 (1974) (*per curiam*) (noting that where ambiguity exists in a disputed factual issue courts of appeals should remand to the district court for initial disposition); *Grimo v.*

*Blue Cross/Blue Shield of Vt.,* 34 F.3d 148, 152–53 (2d Cir.1994) (remanding to the district court because factual record was inadequate for appellate review).

■ Curiously, the parties' briefs seem to ignore this essential question. Zapata does not argue that the district court's apparent finding against him was unclear or that the court would have clearly erred in finding that he had not met his burden in establishing a failure to consult. Consequently, the government nowhere addresses the question and does not urge us to affirm on this alternative ground. The government, however, would be hard-pressed to defend the district court's decision by urging this Court to find a fact that was briefly alluded to, but not definitely established, below. Although the government could concede the evidentiary point in Zapata's favor on appeal, we do not believe it has made such a concession.

Accordingly, we believe a remand for the limited purpose of determining whether Scolari consulted with Zapata is appropriate. A remand would allow the district court to state its fact-finding clearly. *Cf. United States v. Kostakis,* 364 F.3d 45, 52 (2d Cir.2004) (remanding for further fact-finding where "the district court did not find these facts; it simply assumed them to be true"). The trial court is better situated to make definitive findings of fact on the existing record. *See Georgia v. Ashcroft,* 539 U.S. 461, 491, 123 S.Ct. 2498, 156 L.Ed.2d 428 (2003). "Decisions as to whose testimony to credit and as to which of competing inferences to draw are entirely within the province of the trier of fact." *Palazzo ex rel. Delmage v. Corio,* 232 F.3d 38, 44 (2d Cir.2000).

For the reasons stated above, the district court's judgment of August 22, 2001, is VACATED, and the case is remanded for further proceedings consistent with this

opinion. Because we remand only for the limited purpose of determining whether Scolari had conferred with Zapata regarding a possible appeal, we remand pursuant to *United States v. Jacobson,* 15 F.3d 19 (2d Cir.1994). As a result, although the mandate shall issue forthwith, we retain jurisdiction so that either of the parties may seek appellate review by notifying the Clerk of the Court within thirty days of entry of the district court's judgment on remand. *See, e.g., Fontana v. Republic of Argentina,* 415 F.3d 238, 242 (2d Cir.2005); *McGrath v. Toys "R" Us, Inc.,* 409 F.3d 513, 523 (2d Cir.2005). Such notification will not require the filing of a new notice of appeal. If notification occurs, the matter will be referred automatically to this panel for disposition. If circumstances obviate the need for the case to return to this Court, the parties shall promptly notify the Clerk of the Court.