Hernan Lopez FONTANA, Mariana Mori De Lopez and Latinburg S.A., Plaintiffs–Appellees,

v.

The REPUBLIC OF ARGENTINA, Defendant–Appellant.

Docket Nos. 04–4069–CV(L), 04–4074–CV(CON).

United States Court of Appeals, Second Circuit.

Argued: March 28, 2005.

Decided: July 15, 2005.

Guillermo A. Gleizer, New York, NY, for Plaintiffs–Appellees.

Carmine D. Boccuzzi, Cleary, Gottlieb, Steen & Hamilton, New York, N.Y. (Jonathan I. Blackman, on the brief), for Defendant–Appellant.

Before: FEINBERG, SACK and KATZMANN, Circuit Judges.

FEINBERG, Circuit Judge.

This is a consolidated appeal of two cases in which the beneficial owners of certain bonds issued by the Republic of Argentina ("Argentina") sued after Argentina defaulted on the bonds. Argentina appeals from two judgments of the United States District Court for the Southern District of New York (Griesa, J.). Argentina's sole argument on appeal is that the plaintiffs, as beneficial owners rather than registered holders of the bonds in question, lack standing to sue. The district court rejected that argument and granted the plaintiffs' motions for summary judgment. We vacate the district court's judgments and remand for further proceedings.

## I. Background

Plaintiffs-appellees Hernan Lopez Fontana and Mariana Mori de Lopez, both

citizens of Argentina, are the beneficial owners of bonds having an aggregate principal value of $460,000. Plaintiff-appellee Latinburg S.A., a corporation organized under the laws of Uruguay, is the beneficial owner of bonds having an aggregate principal value of $1,437,000.

A Fiscal Agency Agreement ("FAA"), governed by New York law and executed in 1994 between Argentina and the Bankers Trust Company, is the basic contract governing the terms of the bonds at issue here. Section 12(d) of the FAA states that Argentina defaults if, among other eventualities, "a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic [is] declared by the Republic." In December 2001, Argentina declared such a moratorium. Subsequently, the plaintiffs invoked section 12(e) of the FAA and, by "notice in writing[,] declare[d] the principal amount ... due and payable immediately." Pursuant to section 12(e), "upon any such declaration the [principal amount] shall become and shall be immediately due and payable." After sending the notices described in section 12 and not receiving payment from Argentina, in October 2003 the plaintiffs filed complaints in the district court seeking recovery of the principal and overdue interest.[1]

In December 2003, Argentina moved to dismiss the complaints on the ground that the plaintiffs lacked standing to sue. Pursuant to section five of the FAA,

[s]o long as the Depositary for a Global Security, or its nominee, is the registered owner of such Global Security, such Depositary or such nominee, as the case may be, will be considered the sole owner or holder [of the bonds] .... Except as specified below ..., owners of beneficial interests in a Global Security ... will not be considered the owners or holders thereof .... Accordingly, each Person owning a beneficial interest in a Global Security must rely on the procedures of the Depositary for such Global Security and, if such Person is not a Participant, on the procedures of the Participant ... to exercise any rights of a holder under the Securities or this Agreement.

Argentina argued in the district court that because the Depository Trust Company ("DTC")[2] is the registered holder of the bonds, and because DTC's nominee is Cede & Co. ("Cede"), the plaintiffs, as beneficial owners, had no contractual right to bring suit.

The district court rejected this argument. In both opinions disposing of the cases consolidated here, Judge Griesa stated that the "Republic's argument to dismiss for lack of standing based on the language in this FAA has already been denied in a previous ruling by this court." That previous ruling, which was made at a March 2004 hearing in a related case,[3] was that "the beneficial owners have standing."

---

1. Pursuant to section 22 of the FAA, Argentina "expressly accept[ed] the jurisdiction" of "any state or federal court in the City of New York" for "any action arising out of or based on the Securities or this Agreement by the holder of any Security."

2. Both "depository" and "depositary" appear in the parties' submissions. Rather than adopt one spelling for use in this opinion, we quote the spellings as they appear in the parties' submissions.

3. We asked the parties to apprise us of the number of suits in the courts of this Circuit that sought or seek recovery on defaulted financial instruments issued by Argentina or one of its provinces. The parties informed us that there were approximately 50 such cases, involving over 285 plaintiffs, pending in the Southern District of New York as of April 2005. All of these cases have been assigned to Judge Griesa.

At that hearing, at which counsel for the parties in these two appeals were present, counsel for Argentina argued that the portion of FAA section five quoted above confers standing exclusively upon the registered holder, DTC. The following exchange then occurred:

> THE COURT: Is the Depository Trust Company filing any lawsuits?
>
> [COUNSEL FOR ARGENTINA]: We have not heard from the depository—
>
> THE COURT: Is the Depository Trust Company participating in any conferences about a debt workout?
>
> [COUNSEL FOR ARGENTINA]: I am not aware of[ ] that your Honor.
>
> THE COURT: ... The Depository Trust Company makes a little dab of money by performing ministerial functions.... They would have no interest in filing a lawsuit.
>
> [W]hat you are talking about is giving them the sole right of action, and that will never happen. They will never sue. They will never sue. Never heard of it.
>
> What is really important is the last clause, the last sentence, beginning "The [R]epublic understands."

That last clause of the portion of section five at issue, hereafter the "Republic understands" clause, provides:

> The Republic understands that under existing industry practices, if ... an owner of a beneficial interest ... desires to take any action which a holder is entitled to take under the Fiscal Agency Agreement, the Depositary for such Global Security would authorize the Participants holding the relevant interests to take such action, and such Participants would authorize beneficial owners owning through such Participants to take such action ....

At the hearing, Judge Griesa stated that this clause "is the important part of that whole paragraph for our purposes. What it does say is that the [R]epublic understands that the depositories and the participants will allow the beneficial owners to sue."

Counsel for Argentina protested, "[T]hat has not happened here. There has been no showing that there has been any authorization." Judge Griesa replied, "If the Court called the Depository Trust Company into court, ... we would get as many authorizations as necessary. It would just be done. They [DTC] have no interest in ... blocking it." The judge then asked counsel for Argentina if he would like to adjourn until a DTC representative could appear in court and stated, "I am sure they would sign any [authorization] you want them to sign. Do you want to go through that?" Counsel for Argentina replied, "No, your Honor." Judge Griesa concluded:

> We are not going to do a lot of foolishness. We are going to get down to practical fact. The fact is that these beneficial owners are entitled to sue. If there are some formalities that have to be carried out, they can be easily carried out, and that's that....
>
> ....
>
> If [Argentina] want[s] to insist on formalities, we will have all the formalities, and the question will be who will pay the cost of getting those formalities accomplished.

As far as the record discloses, Argentina never in the district court "insist[ed] on [the] formalit[y]" of DTC's or Cede's authorizing the plaintiffs' suits.

Given Judge Griesa's rejection of Argentina's standing argument, his disposition of the two cases now on appeal was straightforward. In both cases, he ruled that the "obligations of the Republic on the bonds ... are unconditional. Sovereign immunity has been waived. The Republic default-

ed on the bonds when it ceased to pay the interest.... [T]he Republic now owes the ... plaintiffs principal and accrued interest." Judge Griesa denied Argentina's motions to dismiss and granted the plaintiffs' summary judgment motions. Argentina filed a timely appeal in both cases.

## II.   Discussion

On appeal, Argentina argues that the plaintiffs, because they are beneficial owners rather than the registered holders of the bonds at issue, lack standing to sue. Argentina suggests that, if this Court does not agree, the question whether beneficial owners have standing to sue should be certified to the New York Court of Appeals. In response, the plaintiffs argue that the FAA gives them standing to sue and that, even if it does not, the plaintiffs obtained adequate authorization to sue.

We review grants of summary judgment de novo. *See, e.g., Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003). In doing so, we "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Id.*

Argentina concedes in its brief that the plaintiffs "would have been able to bring suit ... if authorized by DTC or Cede." The plaintiffs assert that they received adequate authorization. Specifically, they point to letters from Euroclear Bank S.A./ N.V. ("Euroclear") and Merrill Lynch. The letters are dated between August and October 2003, and all of them are dated before the plaintiffs filed their complaints in the district court on October 29, 2003. The plaintiffs assert that Euroclear is a "nominee or a 'Participant'" that is empowered to authorize suit pursuant to the "Republic understands" clause of FAA section five.

There are five Euroclear letters in the record: three are addressed to Wachovia Securities LLC and refer to bonds held by plaintiff Latinburg, and two are addressed to Merrill Lynch PFS/Segregate and appear to refer to bonds held by plaintiffs Fontana and Mori de Lopez.[4]  The letters all state substantially the same things and all indicate that the bonds at issue have "been blocked ... for the purpose of filing a claim." The letters also all state that the bonds "can be unblocked only at your request and only provided that you are able to meet any further requirements we may have for unblocking your holding." There is no language in the letters explicitly authorizing the plaintiffs to sue Argentina.

There is also a letter from Merrill Lynch in the record, which is addressed to plaintiffs Fontana and Mori de Lopez. The letter lists the bonds held by the plaintiffs and states that the "Securities are held for you as beneficial owner." There is no language in the letter explicitly authorizing the plaintiffs to sue Argentina.

Argentina contends that these letters "do not contain any authorization to bring a lawsuit," and that "[e]ven if the letters did constitute valid authorization by Euroclear, [the plaintiffs] ... would need to show that DTC or Cede authorized Euroclear (which is not a DTC nominee) to sue. They have not done so."

For a number of reasons, we believe that we should remand these cases to the district court for further proceedings.

The record before us is far from clear. The parties have not pointed to anything in the record directly bearing on whether there was any communication between the plaintiffs and DTC or Cede. Also, it is not

---

4.  The parties do not explain the significance of the fact that the Euroclear letters are addressed to Wachovia and Merrill Lynch rather than to the plaintiffs.

clear what the exact function of Euroclear and Merrill Lynch is and what authority, if any, they have to authorize the plaintiffs to file suit against Argentina. Moreover, the judge did not decide whether the letters adequately authorized the plaintiffs to sue, nor whether, if the letters are ineffective, the plaintiffs might still obtain formal authorization from DTC or Cede.

The issue that the judge actually decided—that the "Republic understands" clause of the FAA gives the plaintiffs standing to sue—is not simple and may ultimately require certifying the question to the New York Court of Appeals, which would entail further significant delay for the beneficial owners of the bonds.

But putting the effect of the "Republic understands" clause aside, Argentina may have waived its argument that the FAA requires the plaintiffs to obtain formal authorization to sue from DTC or its nominee. When counsel for Argentina stated at the March 2004 hearing that the plaintiffs had not obtained such authorization, Judge Griesa specifically asked counsel whether he wanted to adjourn the hearing until a DTC representative could appear in court to grant the authorizations. Counsel declined. Although the judge may have, as he put it, "engaged in a little rhetoric," counsel for Argentina nevertheless failed to insist on the plaintiffs' securing formal authorization from DTC. The argument may therefore have been waived, which would make it unnecessary to decide the effect of the "Republic understands" clause. Judge Griesa will have an opportunity to decide the waiver issue on remand.

If Judge Griesa decides that Argentina's argument regarding authorization was not waived, that the letters do not authorize the plaintiffs to sue and finally that there is nothing else the plaintiffs can do to obtain such authorization, the judge could then reconsider—specifically in light of applicable New York law—his prior holding that the "Republic understands" clause gives the plaintiffs standing to file suit.

### III. Conclusion

For the above reasons, the judgments of the district court are vacated and the cases are remanded pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir.1994). The mandate shall issue forthwith, but we will retain jurisdiction so that any of the parties may seek further appellate review by notifying the Clerk of the Court within 30 days of entry of the district court's judgment on remand. Upon such notification, which will not require the filing of a new notice of appeal, the matter will be referred to this panel for disposition.